ANNA M. DE CASTELLO et al., Appellants, v. THE CITY OF CEDAR RAPIDS et al., Appellees.

**DEDICATION:** Essential Elements—Intent to Dedicate—Actual Dedication—Acceptance. To constitute an express or implied dedication of land to public use, there must exist (a) an actual intent to set aside the physical property to public use, evidenced by unequivocal and convincing evidence, (b) an actual setting aside of the physical property to public use, *in praesenti,* and (c) an express or implied acceptance *in praesenti* or *in futuro* by the public, of the dedication. Evidence reviewed and held not to be of that character sufficient to establish dedication of land for a public street.

*Appeal from Linn District Court.*—HON. MILO P. SMITH, Judge.

THURSDAY, JUNE 24, 1915.

ACTION to enjoin the defendant city from opening up a street over land owned by the plaintiff. The city's claim is based on an alleged dedication of the strip in controversy to public use. Decree below for the defendant. Plaintiff appeals.—*Reversed.*

*B. L. Wick, Geo. F. Buresh,* and *M. P. Cahill,* for appellants.

*Wm. Chamberlain* and *C. F. Luberger,* for appellees.

GAYNOR, J.—This is an action in equity brought to enjoin the defendant from grading a certain piece of ground claimed

by the defendant to be an extension of Sixteenth street. The plaintiff claims to be the owner of the land, and has contracted to sell the same to the other plaintiff, Norton.

The contention of the defendant is that, prior to the defendant's entering upon this land for the purpose of opening the street, the plaintiff had dedicated a strip thirty-five feet wide, along the west line of her land, extending from Eighth avenue south about sixty feet. Sixteenth street runs north and south. Eighth avenue runs east and west. Sixteenth street, north of Eighth avenue, has been opened and used to its full width, seventy feet. South of Eighth avenue, and in a line with Sixteenth street and in a line with the east side of North Sixteenth street, is the land in controversy. The owners of the land south of Eighth avenue and west of the land in controversy have dedicated thirty-five feet to the use of the public for a street. The defendant is now seeking to open Sixteenth street south of Eighth avenue to the full width of seventy feet, thus seeking to appropriate thirty-five feet off the west end of plaintiff's land. Plaintiff's land is immediately south of Eighth avenue and east of Sixteenth street extended, together with the portion now in controversy. We submit a plat herewith which shows the location of the *locus in quo*.

The controversy here can be presented without a statement of the issues made by the parties in the pleadings. The plea of the defendant is that the ground in controversy was dedicated by the plaintiff and accepted by the public as a street; that this dedication was orally made, and was made about the 30th day of March, 1904.

Dedication is distinguishable from a grant in that it requires, to make it effectual, no specific grantee *in esse* at the time of the dedication. It involves the idea of a giving to the public for public use, a certain right or easement in land for a specific public purpose. A dedication is a devotion to public use of land, or an easement in it. To make it effectual, it is not necessary that it appear that there be a

Cedar Rapids, Ia., May 23, 1913.

The above is a correct plat of land deeded to Ame M. De Castello, described as follows: Commencing at a point 633 ft. north of S. W. Cor. of S. E. ¼ sec. 22, T. 83 N., R. 7 W., 5 P. M., thence east 300 ft., thence north 100 ft., thence west 300 ft., thence south 100 ft. to point of beginning, also of out lot· "A" of Forrest Hill Add.

Surveyed and platted by us.
M. Tschirge & Sons,
Engineers,
314 Masonic Bldg.

distinct grantee, or a corporate body in existence at the time of the dedication, to whom the dedication is made and by whom it may be accepted. It involves an act by the owner, from which it is made to appear that he has set aside a portion of his land to the use of the public for a public purpose.

Private property cannot be taken for public use without first making or providing for compensation. The party may, however, give his land, or an interest in it, to the public use. Before, however, it can be held that he has done so, it must be clearly shown by some unequivocal evidence that he has parted with all right and control over the land inconsistent with the purpose to which he has devoted it. The manner in which the dedication is made is not a material matter. Unlike other interests in land, it may be shown by parol. The intent to dedicate, and the dedication and acceptance by the public, or by the party to whom dedication is made, are essential to constitute a completed dedication.

The dedication of land to a public use does not necessarily involve a parting with the fee. It involves rather, a right to the use of the land against interference from the dedicator. After a complete dedication and acceptance, the one making the dedication is thereafter estopped to make any claim to the land inconsistent with the use to which he has formally and solemnly devoted it.

In *Hurley v. City of West St. Paul*, 83 Minn. 401, 86 N. W. 427, it is said, in substance, that common law dedications are divided into two classes, expressed and implied. In either, however, it is necessary and essential that there be a surrender or an appropriation of the land by the owner to the public use. An express dedication is evidenced by some explicit or positive declaration, or manifestation of intent to surrender the land; an implied dedication, by some act or course of conduct on the part of the owner from which a reasonable inference of intent may be drawn. Intent to dedicate is indispensable, and without the intent shown in some way, there can be no valid dedication.

Intent to dedicate, however, is not sufficient. While the *quo animo* must exist to make the dedication, to devote the land to the public use, to give it or grant it to the public use, yet there must be actual setting aside of the physical property to the public use, accompanied by an intent that it be so used.

A dedication, to be effectual, must be *in praesenti*. There must be a present actual parting with the use of the property to the public, manifested by some unequivocal act indicating clearly an intent to so devote it. However, it is not necessary that it be put to the particular public use immediately upon the dedication. This may follow at some future time. While the dedication must be *in praesenti*, the acceptance or devotion to public use may be *in futuro*.

The extent of the dedication, its character and scope, depend, of course, upon the intention of the dedicator, as manifested in the act of dedication, and are to be gathered from all the facts and circumstances that attend the situation.

In *O'Malley v. Lumber Co.*, 141 Iowa 186, it is said: "A highway may be dedicated by parol, without deed or other written evidence thereof, . . . but it is a cardinal principle of the law on this subject that the intent to dedicate must clearly appear, and the acts and circumstances relied on to prove such intent must be unequivocal and convincing."

While we have said there must be an acceptance of the thing dedicated in order to make the dedication complete, this acceptance may be implied sometimes, where the thing dedicated is of such a character that the use to which it is dedicated is so clearly beneficial to those to whom the dedication is made that the law will presume an acceptance, and it sometimes happens that the thing dedicated is of such a nature that it cannot be devoted exclusively to the public use; so it becomes necessary, in considering the question of dedication and the use to which it was dedicated, that we consider the thing dedicated and the public use to which it is to be put after the dedication is complete. But whether or not it be devoted exclusively to the public use by the dedica-

tion, the fact that private rights are involved in the use does not destroy the dedication, nor entitle the dedicator to disturb the use, by those to whom it was dedicated, for the purposes intended.

A city is not bound to accept land, though expressly dedicated to it for public use. Its rights in the land and the use or its duty to the public arise only when it has accepted the dedication, or has done some act which unequivocally shows an intent to assume jurisdiction over the thing dedicated. There is a difference between an offer to dedicate and an actual dedication. An offer to dedicate does not become complete until there is an actual acceptance by those to whom the offer is made.

In *Holdane v. Cold Spring*, 21 N. Y. 474, 477, it is said: "The owner's acts and declarations should be deliberate, unequivocal, and decisive, manifesting a positive and unmistakable intention to permanently abandon his property to the specific public use. If they be equivocal, or do not clearly and plainly indicate the intention to permanently abandon the property to the use of the public, they are insufficient to establish a case of dedication."

In *Lownsdale v. Portland,* 1 Ore. 381, 404, the Supreme Court of that state said: "The burden of proof rests upon the defendant to show a dedication. It must be clear and satisfactory. . . . The security and certainty of the title to real estate are among the most important objects of the laws in any civilized community. Around it the law has thrown certain solemnities and formalities, so that the fact may be known and read of all men. What a man once has he is not to be presumed to have parted with, but the fact must be shown beyond conjecture. And although, in the case of streets and public grounds in towns, from the nature of the case a dedication may be shown by acts resting on parol, they must be of such a public and deliberate character as makes them generally known, and not of doubtful intention."

It is essential, to constitute a dedication, that the donor

should intend to set apart the land for the use of the public. There can be no dedication unless there is a present intent to appropriate the land to public use. See Elliott on Roads and Streets (Ed. of 1890), p. 92; 2 Dillon on Municipal Corporations, 636. With these well-settled propositions of law in mind, we proceed to the consideration of the facts shown by the evidence on which the rights of these parties must stand.

It appears that plaintiff was the owner of a certain strip of land south of the land in controversy, and abutting on what would be Sixteenth street if extended south; that while she was the owner of this land, the title was in her husband. In 1907, she conveyed this land to one Mrs. Cisne, and included in the conveyance the thirty-five feet which it is now contended by the defendant was by her dedicated to the public. It appears that the sale was made by one Mally, a brother of the plaintiff, Mrs. De Castello, who claimed to be acting for the plaintiff. It appears that no reservation was made in the deed of any strip of land for a street. Mally claims, however, that, at the time he sold to Mrs. Cisne, he told her that Sixteenth street would be extended, and that thirty-five feet off the west end of the lot conveyed would be used for a street. He does not claim that he was authorized to make this statement by Mrs. De Castello, nor is it claimed that the plaintiff knew at the time that such a statement was made. The title, however, was in her husband, and Mally claims that her husband was present at the time these statements were made. This is denied by the husband.

It appears that, after this conveyance was made to Mrs. Cisne, this land was used the same as before; that fences were built along the west end and up to the original line; that no act was done after that indicating any intention in the part of Mrs. Cisne to devote the land to public use. It would rather seem from the testimony that she at least did not consider that the public had any right in it. Mrs. Cisne continued to occupy the land conveyed to her, including this

strip on the west. It appears that subsequently the intervener, Mally, purchased this property from Mrs. Cisne, and he and the other intervener, B. F. Youtsey, are now the owners of it; that they purchased it with full knowledge of the true situation as to the land in controversy. They knew when they purchased it that plaintiffs had refused to give a street over this thirty-five feet in controversy. The reason Mally purchased it back, as he says, was that he found out De Castello would not give this land for a street, so he traded a house and lot to Mrs. Cisne for the lot to redeem his word.

The evidence discloses that nothing was ever said by the De Castellos touching a disposition on their part to dedicate the land after the conveyance to Mrs. Cisne; in fact, the record is very barren of any suggestion of statements made by either of the De Castellos. All that was said was said touching the thirty-five feet on the west end of the land deeded to Mrs. Cisne, and this was said by Mally, who is now the owner, if said at all. Nor does there anything appear, except suggestions made in the evidence by Mally, that there was any talk of dedicating any portion of the land north of that conveyed to Mrs. Cisne. It appears that there was never anything done to carry out any dedication in the way of clearing the ground for use as a street, or in the building of sidewalks. Nor is there any indication of any use by the public of this land. Whatever road there was across this thirty-five feet in controversy was there for the use of the occupants of the house conveyed to the Cisnes alone. It does not appear clearly that the plaintiff ever said anything publicly that she would dedicate this thirty-five feet or had dedicated it. It appears that at the time this dedication is claimed to have taken place, Eighth avenue was open to the west, but not to the east; that subsequently Eighth avenue was extended. Plaintiff then purchased the strip of land lying north of her land and between that and Eighth avenue, and shortly after obtaining this strip, a permanent sidewalk was built on Eighth avenue along the south side, the length of her prop-

erty, and across the north end of the land now claimed to have been dedicated to the public, and goes to the west edge of the thirty-five feet in controversy. It appears that, at the time this property was sold by Mrs. De Castello to her co-plaintiff, Norton, there was a wire fence on the west end and running north and south; that there was a row of raspberry bushes on the west end of this thirty-five foot strip. It appears that there had been a wire fence and trees on the west end of this land in controversy, up to a very short time before this action was commenced. It does not appear that there had been any travel over this strip by the public at any time. The evidence shows that there was a fence on the west side of this strip running north to Eighth avenue; that the first fence put there was a five-board fence. Finally that fence was taken down, and a barbed wire fence put in; that most of this barbed wire fence was there at the time this action was commenced; that part of this thirty-five feet has been used by the De Castellos as a lawn and garden during all the time.

The witnesses who testified to what was said by Mally at the time this property was sold to Cisne say that Mally did not say how wide the street would be extending north from the property deeded to Cisne. The most that can be claimed is that, at the time Mrs. Cisne bought this property, thirty-five feet were measured in front of her property with a view to locating the house back far enough so that it would not be interfered with in the event a street was opened in front.

Mally testified:

"When I sold De Castellos the house, Sixteenth street was laid out north from Eighth avenue. We concluded that the street would be open to Mt. Vernon avenue south, and we said, 'We will allow thirty-five feet for a street.' We put the house far enough back to allow for a front lawn and also to plant trees there, and put in a sidewalk, so that if

they lowered the grade upon the street, the house would be in a proper place, and we planted the trees back because we knew that when the street was opened up, it would have to be graded, and, consequently, the trees were planted on the lot line so not to disturb them after the city had graded the street and put down the walk. At the time I sold to Mrs. Cisne, there was no street; only a partial street west of my lot."

He further says that he told Mrs. Cisne that he would give her a deed to the whole lot, but that she was to understand that when the street was opened up, it belonged to the city.

Whether or not this piece of land was dedicated by the De Castellos to public use at the time of the making of the deed to Mrs. Cisne depends entirely upon the testimony of Mally and Mrs. Cisne, and their testimony is absolutely contradicted by the testimony of both Mrs. De Castello and her husband, both as to what was said by Mrs. Cisne at the time and as to the authority assumed by Mally in making this statement.

We do not understand, from the record, that Mally claims that any authority was given to him to dedicate any portion of this land as a public street. The dedication seems to rest upon the thought that he was the agent of Mrs. De Castello, or her husband, in making the sale to Mrs. Cisne, and that as agent, he spoke for and in their behalf, and assumed that the representations made by him were binding on Mrs. De Castello, the real owner. Whether or not, as agent for the sale of this particular strip of land to Mrs. Cisne, his authority extended so far as to bind her by representations made to Mrs. Cisne touching the giving of the land in front of this land conveyed as a street, we need not inquire. There is no evidence of any authority on his part to bind her by any agreement to extend the street north of the land conveyed. Both Mr. and Mrs. De Castello testified that Mally

was not authorized to make any representations to Mrs. Cisne that they were going to give the land in controversy as a street. Mrs. De Castello further testified, "I never told anyone that I had, or was willing to give this property for a street, and never authorized my brother, as my agent, to make such representation."

Lewis Zika testified that he was commissioner of streets and public improvements; that he ordered the grading done on South Sixteenth street; that the strip of land in controversy had never been used up to last May; that he heard a year ago that this thirty-five feet in controversy had been dedicated, and he said that the city had never accepted it; that he was asked to open up the street; that he examined it and found there was nothing beyond this lot, and it would not be worth while opening it; that Mally then informed him that the city could have this piece of ground at any time it wanted it; that he never heard from Mrs. De Castello with reference to it.

We have not set out the testimony of Mally and Mrs. Cisne for the reason that it is absolutely denied by the De Castellos, and for the further reason that the subsequent conduct of the parties is inconsistent with their claims. Their testimony, as it appears in this record, is very fragmentary, and by it a dedication is sought to be established upon a most uncertain foundation, the memory of what was said by parties to a transaction dating many years before they were called to testify to it, and concerning a matter about which no controversy appears to have been had since the alleged statements were claimed to have been made. The memory of Mally is quickened into sensibility by an immediate interest in the subject-matter of his testimony, but this interest does not make it any more reliable as a basis for ascertaining a fact. Testimony as to verbal declarations, or statements made a long time prior, is the most uncertain and unsatisfactory basis for ascertaining the truth. The change of a word, the different phrasing of a sentence, may give it an entirely

different meaning from what was intended by the parties. With nothing but the memory of these witnesses as a basis on which to rest a finding as to what was said and done by these De Castellos touching this matter, we do not find that certainty which the law requires when private property is to be taken for a public use without compensation. Usually, when parties have deliberately done an act, or pledged themselves to an act, their subsequent conduct is not inconsistent with their mental attitude.

A careful reading of this record satisfies us that neither the intervener Mally nor the defendant have been misled by any act of these parties plaintiff to their prejudice; nor have they put themselves in any position to invoke an estoppel against the plaintiff. If the city desires a street, there is a plain, speedy and adequate method open to the city by which it may secure this land for a public use; but, upon this record, we cannot say that they have acquired any right in this property for use as a public highway.

We think, under this record, the cause should be and is —*Reversed.*

DEEMER, C. J., LADD and SALINGER, JJ., concur.