**James MARKSBURY, et al., as Property Owners in Triboji Beach and as Members of the Triboji Beach Betterment Association; and Triboji Beach Betterment Association, Appellants,**

v.

**STATE of Iowa, Appellee.**

**No. 66614.**

Supreme Court of Iowa.

July 21, 1982.

---

W. E. Kunze of Bedell & Kunze, Spirit Lake, for appellants.

Thomas J. Miller, Atty. Gen., and Elizabeth M. Osenbaugh, Asst. Atty. Gen., for appellee.

Considered by LeGRAND, P. J., and UHLENHOPP, McCORMICK, McGIVERIN, and LARSON, JJ.

LARSON, Justice.

This case involves a dispute between lot owners on West Okoboji Lake and the Iowa Conservation Commission over the control of the lake's Tribune Beach. In 1929, The Tribune Company, publisher of a Sioux City newspaper, owned land adjacent to the lake. After having the land surveyed a proprietor's plat was prepared for "Triboji Beach." This new unincorporated subdivision was composed of lots, blocks, streets, boulevards, parks, and "Tribune Beach." In the plat the company certified:

> The beach shown as Tribune together with the Parks, Boulevards and Drives are hereby *dedicated to the public* for use as such, and the Beach shown as Tribune Beach, with the waters marked Lagoon are hereby *dedicated to the public* for use only as such.

(Emphasis added.)

While the dedication was to the "public" and not to any specific state agency or political subdivision, the conservation commission attempted to exercise control over the area in 1978 by implementing a plan to develop the area as a public beach, which included construction of a public boat ramp.

In taking this action the commission relied on Iowa Code section 111.11 which provides:

> Any land adjacent to a meandered lake or a meandered stream which has been conveyed by gift, dedication or other means to the public, but has not been conveyed to the jurisdiction of a specific state agency or political subdivision, shall be subject to the jurisdiction of the [conservation] commission and to the rules promulgated pursuant to this chapter. The commission shall prepare a plan for the appropriate public use of such land in accordance with this chapter within two years of its coming under the jurisdiction of the commission. The plan may be amended by the commission.

(It is undisputed that West Okoboji is a meandered lake within the meaning of the statute.)

Several individual property owners, by themselves and as members of the Triboji Beach Betterment Association, and the association itself, brought this action against the State to enjoin the conservation commission from exercising control over Tribune Beach and to obtain judgment for the expenses incurred by them in protecting their interests. The plaintiffs sought declaratory rulings that the beach was dedicated to property owners only; that if dedicated to the general public it was never accepted; that they acquired the beach by prescription, abandonment, adverse possession, and estoppel; that any claims by the State were barred by Iowa Code section 614.17; and that section 111.11 was both inapplicable under the circumstances and violated the federal and state constitutions. After hearing the evidence the district court entered judgment against the plaintiffs, and they now appeal. We affirm.

Although the case is one of mixed law and equity, we believe its main objective was to obtain an injunction; accordingly, we review the evidence de novo, Iowa R.App.P. 14(f)(7). The evidence shows these facts: The Tribune Company began conveying lots in Triboji Beach in 1929. As the subdivision developed, the cost of maintaining and improving the roads initially was donated by lot owners, even though all roads were open to and used by the public. In 1946, several lot owners petitioned Dickinson County to build a public street through Triboji Beach, which it did. The street was thereafter maintained by the county. Similarly, the cost of maintaining Tribune Beach initially was borne by the lot owners, although it was open to and used by the public. In 1960 or 1961 the conservation commission purchased two lots in Triboji Beach and erected a public dock at the request of certain owners.

## I. *Dedication.*

■ The elements necessary to establish an express dedication are (1) an appropriation of the land by the owner for a public use, evidenced by a positive act or declaration manifesting an intent to surrender the land to the public; (2) an actual parting with the use of the property to the public; and (3) an actual acceptance of the property by the public. *See Schmidt v. Town of Battle Creek*, 188 Iowa 869, 874–75, 175 N.W. 517, 519–20 (1919).

■ Dedication is a question of fact, *Jochimsen v. Johnson*, 173 Iowa 553, 560, 156 N.W. 21, 23 (1916), and must be proven by the party relying upon it, *Dugan v. Zurmuehlen*, 203 Iowa 1114, 1119, 211 N.W. 986, 989 (1927).

■ *A. Offer.* The extent of the offer of dedication, its scope and character, turns on the intent of the offeror or dedicator. *Schmidt*, 188 Iowa at 874–75, 175 N.W. at 519. The plaintiffs seize upon this general principle in urging error on the part of the district court for refusing to accept extrinsic evidence that The Tribune Company intended a "limited" dedication when it conveyed the lots, *viz.*, to restrict use of the beach to property owners only. The district court excluded this evidence because the dedication expressed in the recorded plat was neither ambiguous nor incomplete, and thus, under the "parol evidence" rule, such evidence was inadmissible. This ruling was error, the plaintiffs contend, because "public" has more than one meaning, and had the court considered the extrinsic evidence

to interpret the plat it would have found The Tribune Company intended "public" to include only lot owners.

■ We begin with the general premise that a dedication for public use

> shall be for the use of the public at large, that is, the general, unorganized public, and not for one person or a limited number of persons, or for the exclusive use of restricted groups of individuals. There may be a dedication for special uses, but it must be for the benefit of the public. Properly speaking, there can be no dedication to private uses or for a purpose bearing an interest or profit in the land.

23 Am.Jur.2d *Dedication* § 5, at 6–7 (1965); *accord.*, 2 G. Thompson, *Real Property* §§ 370–72, at 471–505 (1961); Note, *Public Ownership of Land Through Dedication*, 75 Harv.L.Rev. 1406, 1406–07 (1962); 26 C.J.S. *Dedication* § 8, at 407–12 (1956).

■ The district court excluded the extrinsic evidence under the "parol evidence" rule on the ground that it would tend to vary or contradict the terms of the offer of dedication. We do not take such a narrow view on the admissibility of such evidence; rarely is any language so clear that it is subject to only one interpretation. *See* 3 A. Corbin, *Contracts* § 542, at 100–129 (1960). We, as lawyers and judges, might view the phrase "to the public" as words of art with only one meaning. It is within the realm of possibility, however, that others do not, or did not in 1929, and the plaintiffs should be permitted to show that possibility, if they can. Therefore, we consider the evidence proffered to show the limited dedication.

The plaintiffs sought to show an intent to limit the dedication by introducing newspaper advertisements of the Tribune Company. One advertisement stated Tribune Beach was "dedicated to Triboji Beach lot owners," thus assuring the same privileges to all residents, no matter where their lot was located. The plaintiff also sought to show salesmen made it clear, when the lots were sold, that the use of Tribune Beach was limited to lot owners.

■ We believe this evidence falls short of establishing a dedication limited to lot owners. We assume at the outset that The Tribune Company did not intend to do a futile act which, according to the general rule, a limited dedication would amount to. Moreover, the evidence itself is not persuasive. The newspaper advertisements emphasize the availability of access to West Okoboji Lake by owners of all lots, even those not contiguous to it; they do not say, or even imply, that only lot owners have access to it. We have also considered the proffered testimony of similar statements by sales personnel in their attempts to sell the lots soon after the dedication and find them unpersuasive for the same reason: establishing the rights of lot owners to the enjoyment of the dedicated areas does not establish that other members of the public are excluded. The district court properly found an offer of dedication to the public at large.

■ *B. Acceptance.* As with other contracts, there must be an acceptance of the offer of dedication in order for it to be binding. Several principles involving the acceptance of dedicated land by the public apply to this case:

> The acceptance need not necessarily be by the municipality or by public authority. It may be by the general public.
>
> \* \* \* \* \* \*
>
> Very slight evidence is required to establish acceptance by the public . . . .
>
> The acceptance may be so worked by the public, entering upon the land and enjoying the privileges offered,—briefly, by user. And when the user is relied on to raise a presumption of dedication, the duration of the use is wholly immaterial. And such acceptance may be manifested, among other methods, by long and uninterrupted use on part of the public without objection.

*Iowa Loan & Trust Co. v. Board of Supervisors*, 187 Iowa 160, 165, 174 N.W. 97, 98–99 (1919) (citations omitted).

It appears the public has used and continues to use Tribune Beach for various activi-

ties, without objection by lot owners. The parties stipulated West Okoboji Lake has been a popular resort for several years and has been used by recreationalists during that time. There was evidence the general public picnicked on and fished off the shore of Tribune Beach. Other evidence showed a fishing club installed a light near the lagoon and boat owners used the lagoon ramp. Also, there was evidence some of the plaintiffs requested the conservation commission to erect a public dock near the lagoon. Finally, the State established and maintained certain secondary roads within Triboji Beach, which presumably were used by the public.

 The plaintiffs, however, contend the public made no attempt to assert any rights under the dedication until 1978, when the State formalized its plan of development. Although acceptance of dedicated land is not open-ended,

> the tender continues until shown to have been withdrawn, and it is presumed, when the plat has once been solemnly filed, that this tender of right in the property set aside ... continues until something has been done to indicate to the public that the tender has been definitely and permanently withdrawn. The time intervening between the filing of the plat and acceptance is not always controlling. The city or town has a reasonable time in which to make its election, and what is a reasonable time in any particular case depends upon the facts and circumstances ....

*Town of Kenwood Park v. Leonard*, 177 Iowa 337, 343, 158 N.W. 655, 659 (1916); *see Wolfe v. Kemler*, 228 Iowa 733, 740, 293 N.W. 322 (1940).

 The evidence did not clearly indicate when the public began to use Tribune Beach. However, it was admitted by the plaintiffs that the public had used the roads in Triboji Beach since 1932 to the present and that the general public was never excluded from fishing or swimming in the area. The inference is that the public used Tribune Beach immediately after its dedication.

II. *Abandonment, estoppel, and related issues.*

The plaintiffs raise a potpourri of theories under which they claim the public is now barred from claiming the right to use the property, even assuming a valid dedication to the public at large. They contend that they have acquired the property by prescription or adverse possession; that the public has abandoned the use of the property; that the "public" is estopped to claim the use in question; and that they have established a claim to the use of the property to the exclusion of the public by the filing of an affidavit of possession under section 614.17. These theories, which bear many similarities, will be discussed together.

*A.* The prescription, adverse possession, and abandonment theories are based upon the erroneous premise the evidence showed exclusive use of, and maintenance by, the lot owners, coupled with the lack of any material assertion of control by the public or any state agency such as the conservation commission. The record, however, does not bear out these theories.

 The gist of abandonment by the public is an intent to abandon; mere failure to use the property, even if it were shown here, would not be enough, *Sioux City v. Johnson*, 165 N.W.2d 762, 767 (Iowa 1969). No evidence of intent to abandon was presented. Moreover, the continued use of the property by the general public is clearly inferred from the record despite the plaintiffs' assertions there was no evidence the property had been used by any persons other than lot owners and their guests. The beach, park, and lagoon have been physically accessible to the general public at all times; these areas were never fenced or posted as private property. Witnesses testified they have observed occupants of automobiles from many outlying counties and states using the areas. Under such circumstances, we will not assume outsiders did not use the areas. We believe the opposite inference must be drawn from the record:

members of the general public, before and after the filing of this action, have used the areas. Evidence of the critical elements of abandonment, an intent to abandon, and nonuse, are missing in the record.

 *B.* Similarly lacking are the requisite elements of estoppel: continued nonuse of the area by a municipality coupled with a good-faith claim of right by private parties, who, because of improvements or other acts in reliance, would be damaged by their loss of use of the property. *Clinton National Bank v. City of Camanche*, 251 N.W.2d 248, 250 (Iowa 1977). The plaintiffs have not assumed any rights in the property not also available to the general public. While they have, on occasion, cleaned debris from the dedicated areas and have done relatively small maintenance jobs on it, these are not the kind of "improvements" which would make it inequitable to deny their claim of ownership. The claim of right held by these plaintiffs is not qualitatively different from those claims held by the public generally. Further, it is undisputed that the plaintiffs failed to assert any exclusive rights of possession of the property.

 *C.* The elements of title by adverse possession are: an open, exclusive, continuous, actual and hostile possession, under a claim of right or color of title, for at least ten years. *E.g., Council Bluffs Savings Bank v. Simmons*, 243 N.W.2d 634, 636 (Iowa), *cert. denied*, 429 U.S. 1001, 97 S.Ct. 532, 50 L.Ed.2d 613 (1976). Passing the threshold question whether the public may lose rights by adverse possession, *see Sioux City v. Betz*, 232 Iowa 84, 85, 4 N.W.2d 872, 873 (1942), we have already concluded the elements of exclusivity and hostility are lacking under this record.

 *D.* Section 614.17 bars claims of title "against the holder of the record title to the real estate in possession" if the holder and his predecessors are shown to have held claim of title since a certain date which, under the circumstances here, is January 1, 1960. Passing again the question whether such a statute of limitations may bar claims of the public under any circum-

stances, we conclude it does not apply here. First, the affidavit required to establish a bar under section 614.17 must be filed by the owner in possession, or his attorney in fact "as shown by the records." The plaintiff association recorded the affidavit of possession, and no claim is made that it is, itself, the owner in possession or that it has record status as the owners' attorney-in-fact, as required by the statute. Moreover, the record affirmatively shows that the lot owners were neither in physical possession of the area nor claimants of title to it. The district court properly held the claim of the public was not barred by section 614.17.

III. *Section 111.11.*

Section 111.11 confers authority on the conservation commission to accept gifts of land, and improve and use them as public state parks. It then provides: "Any land adjacent to a meandered lake . . . which has been *conveyed by gift, dedication or other means to the public*, . . . shall be subject to the jurisdiction of the commission. . . ." § 111.11(1) (emphasis added). The plaintiffs contend the statute is inapplicable in this case because the beach was not "conveyed." In addition, they argue the statute is unconstitutional as applied because certain of their property rights in the beach were taken without just compensation and due process. *See* U.S.Const. amend. XIV; Iowa Const. art. I, § 18 (1857). The State contends section 111.11 applies to the dedication here because conveyance, as used in the statute, should not be narrowly construed. And, it adds, the statute is not unconstitutional because there were no "property interests" of which the plaintiffs were deprived by the conservation commission assuming jurisdiction over the beach. The district court agreed with the State on both issues.

 *A. Applicability.* Section 111.11 does not define land which has been "conveyed by gift, dedication, or other means . . . ." The general rule, however, is that "conveyance" includes all instruments affecting interests in land. *E.g., United States v. Scholnick*, 606 F.2d 160, 167 (6th

Cir. 1979); *Restatement of Property* § 11, at 30 (19—); *Black's Law Dictionary* 301 (5th ed. 1979). *Cf. Andrews v. Country Club Hills, Inc.*, 18 N.C.App. 6, 195 S.E.2d 584, 586 (1973) (dedication of land for park held to be a "conveyance" under statute allowing withdrawal of dedication). Absent some indication in chapter 111 that the word should be construed differently, this court should not depart from the general rule. *See generally* Iowa Code § 4.1(2) (1981). *See also* Iowa Code § 4.1(8) (1981); Iowa Code § 558.43(3). Accordingly, the district court did not err in determining section 111.11 applied to the dedication of the beach.

*B. Constitutionality.* The plaintiffs argue they were deprived, by operation of section 111.11, of their exclusive right to the beach, their right of management, and their rulemaking and "other decision-making" authority. It is unnecessary, however, to consider whether the statute is unconstitutional by virtue of these deprivations. As discussed in division I, the plaintiffs never possessed such rights in the beach. Because its underlying premise is invalid, there is no merit in the argument.

We have considered all of the arguments raised by the plaintiffs, including their claims for damages, and conclude there is no basis for reversal.

AFFIRMED.