The SONS OF THE UNION VETERANS OF THE CIVIL WAR, DEPARTMENT OF IOWA; Save Iowa Civil War Monuments Foundation, and Dennis Sasse, Appellants,

v.

GRISWOLD AMERICAN LEGION POST 508, Appellee,

City of Griswold, Iowa, Defendant.

No. 00–0681.

Supreme Court of Iowa.

Feb. 27, 2002.

Ronald W. Feilmeyer of Cambridge, Feilmeyer, Landsness, Chase & Jones, P.L.C., Atlantic, for appellants.

James P. Barry of Otto, Lorence & Barry, P.L.C., Atlantic, and Richard J. Howard of Howard Law Firm, Atlantic, for appellee Griswold American Legion Post 508.

LAVORATO, Chief Justice.

The battle before us today is not one of life or death. It is not a battle for freedom. Rather, it is a battle to keep a symbol of those things—a Civil War cannon—in Griswold, Iowa. The historic Civil War cannon first arrived in Griswold nearly a century ago. When the Griswold American Legion Post 508 decided to sell the cannon, the plaintiffs decided to fight back. The plaintiffs lost their first battle in the district court, and they now appeal the district court's ruling on summary judgment in favor of the defendants. While we understand the great historic significance of the Civil War cannon, and the plaintiffs' desire to keep the cannon in Griswold, the law dictates a different outcome. Therefore, we affirm.

## I. Scope of Review.

■ Our review of a summary judgment ruling is for correction of errors at law. Iowa R.App. P. 4; *Bailey v. Batchelder*, 576 N.W.2d 334, 337 (Iowa 1998). Summary judgment is appropriate when the moving party shows no genuine issue of material fact exists, and it is entitled to judgment as a matter of law. Iowa R. Civ. P. 237(c); *Bennett v. MC No. 619, Inc.*, 586 N.W.2d 512, 516 (Iowa 1998). The court examines the record before the district court to determine whether any genuine issue of material fact exists and whether the court correctly applied the law. *Schoff v. Combined Ins. Co. of Am.*, 604 N.W.2d 43, 45 (Iowa 1999).

Ordinarily, the record for summary judgment purposes includes the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits. Iowa R. Civ. P. 237(c). Here, the court had the benefit of all these documents as well as photographs and vintage and recent newspaper articles. In ruling on the motion for summary judgment, the parties invited the district court to consider "anything that's in [the] file" and to "make a final determination as to ownership of the cannon."

## II. Facts.

The following undisputed facts appear from all the documents in the record.

One of the plaintiffs in this case, The Sons of the Union Veterans of the Civil War, Department of Iowa (Sons of the

Civil War), is a national organization chartered by Congress. Another plaintiff, Save Iowa Civil War Monuments Foundation (Foundation), is an Iowa nonprofit corporation that supports the repair and protection of Civil War monuments. The remaining plaintiff, Dennis Sasse, is a resident of Griswold. The defendant is the Griswold American Legion Post 508 (American Legion) located in Griswold. The City of Griswold, a named defendant, did not participate in the hearing on the summary judgment motion at issue in this case, nor has it participated in this appeal.

In 1911, Congressman Walter I. Smith arranged for the government to donate a cannon to the local Grand Army of the Republic, Worthington Post No. 9 (also known as the Cass County Veteran's Association) (hereinafter "GAR"). The cannon arrived in Griswold in early May of 1911. The three-inch, wrought iron cannon was manufactured in 1863 by Phoenix Iron Co. of Phoenixville, Pennsylvania, and used in the Civil War. The plan was to construct a "suitable mounting" out of cement for public display of the cannon in Griswold City Park.

On August 26, 1920, the GAR met with the American Legion. Minutes from that meeting reflect that the GAR agreed to turn over all of its property to the American Legion. Among the property listed was "one cannon." Minutes from a September 7, 1920, meeting of the American Legion indicate that the American Legion accepted the GAR property.

The record is unclear of the cannon's exact location since its arrival in Griswold in 1911. The best indication from the record is that the cannon remained in the Griswold City Park until 1941, when it was placed in front of the American Legion Club in Griswold. In 1965, the American Legion placed the cannon and pedestal on display in front of its new building. In 1981, the American Legion sold its building and the cannon was put back in the Griswold City Park.

The American Legion removed the cannon from the park in 1998, intending to sell it to a Pennsylvania collector for $16,000. In addition, the American Legion is to receive from the collector a "shootable replica" of the cannon's barrel, valued at $7000. Completion of the sale depends on the outcome of this lawsuit. The American Legion plans to use the proceeds from the sale to (1) add additional scholarship money for area students and (2) increase its current sponsorship of Griswold students to Boys State from four to five. Once the cannon's value became public knowledge, the American Legion moved the cannon to a "secure location" for "protective custody" because it feared someone might steal it.

Over the years, members of the American Legion have provided maintenance and upkeep on the cannon, regardless of its location. The cannon was last fired in 1979.

Numerous plaques, writings, or symbols are incorporated into the concrete pedestal that supported the cannon in the Griswold City Park. Poured into the concrete on the front of the pedestal are the words "Presented by Worthington Post No. 9, GAR, Griswold Iowa, '61 '65." A brass plaque attached to the front of the pedestal reads, "Dedicated to All Veterans of All Wars and Conflicts, Dedicated May 25, 1992, Cass County Veterans Memorial Fund." On one side of the pedestal, the American Legion emblem appears. A brass emblem on the other side of the pedestal reads, "Spanish War Veterans 1888–1902, Porto Rocoio Cuba Philpine Island." The cannon barrel rested in the top of the pedestal and fastened down at approximately a ten- to fifteen-degree upwards angle.

A comparison of more recent photos with an older photo indicates a new pedestal must have been constructed sometime between 1911 and 1961. For example, the old photo shows a large plaque on one side of the pedestal. The plaques on the side of the current pedestal are much smaller. In addition, there is no plaque on the front of the pedestal in the old photo. The cannon in the old photo appears to be resting on top of the pedestal, with no upward angle indicated.

### III. Proceedings.

The Sons of the Civil War and the Foundation filed a petition for declaratory judgment, asking the court to (1) declare the cannon the property of the Sons of the Civil War or the City of Griswold; (2) direct and find that the American Legion has no right, title, and interest in the cannon; and (3) restrain the American Legion from selling or otherwise disposing of the cannon. Dennis Sasse was later added as a plaintiff, and the City of Griswold was added as a defendant.

The three plaintiffs filed a motion for summary judgment, contending that newspaper reports and plaques on the cannon's pedestal "clearly indicate" the cannon was dedicated to the public, and therefore became public property. The district court denied the motion, ruling there were genuine issues of material fact regarding the ownership of the cannon.

The American Legion then filed a motion for summary judgment. It asserted that, because the plaintiffs and the City of Griswold could not claim any ownership interest in the cannon, and the American Legion could prove ownership, the American Legion was entitled to judgment as a matter of law.

The district court found that the cannon was given to the GAR, and the GAR intended to give it to the American Legion when the GAR transferred its property to the American Legion. Further, the court found that no "public dedication" of the cannon took place. The court granted the American Legion's motion for summary judgment.

It is from this ruling that the plaintiffs appeal.

### IV. Issue.

The plaintiffs raise only one issue on appeal. They argue that the district court erred in concluding that there had been no dedication of the cannon to the public. Specifically, the plaintiffs contend that the GAR and the American Legion gave up any rights in the cannon when it was dedicated to the public in the early 1900s and again when it was rededicated in 1992. The cannon, they conclude, thus became public property, and the American Legion gave up any rights it may have had to sell the cannon.

In contrast, the American Legion contends the GAR's transfer of the cannon to it shows the GAR's intent to transfer the cannon *it owned*. "Had [the GAR] dedicated the cannon to the public it would not have taken the time to transfer it to the [American] Legion." Moreover, the American Legion argues, it has maintained the cannon since 1920, and it is the only party that has shown any ownership interest in the cannon.

### V. Analysis.

### A. Dedication.

■ "Dedication" is "the setting aside of *land* for a public use." 23 Am.Jur.2d *Dedication* § 1, at 5 (1983) (emphasis added). The Iowa cases cited by both parties, and relied upon by the district court, also address the issue of dedication of *land*. *See, e.g., Henry Walker Park Ass'n v. Mathews*, 249 Iowa 1246, 1252–59, 91 N.W.2d

703, 707–11 (1958) (holding street and parking lot had been dedicated to public use and accepted by the public); *City of Sioux City v. Tott*, 244 Iowa 1285, 1293, 60 N.W.2d 510, 515 (1953) ("A common law dedication of *land* for a public purpose is well recognized in law.") (emphasis added); *De Castello v. City of Cedar Rapids*, 171 Iowa 18, 19, 153 N.W. 353, 355 (1915) ("A dedication is a devotion to public use of *land*, or an easement in it.") (emphasis added). Thus, it is not accurate to describe a gift or donation of personal property as a "dedication." *City of Chattanooga, Tenn. v. Louisville & Nashville R.R.*, 298 F.Supp. 1, 9 (E.D.Tenn.1969). We are, therefore, not convinced that the "dedication" analysis is appropriate in the context of personal property such as the cannon at issue here. However, because "dedication" was the legal theory relied upon by the parties and the district court, we will analyze the issue in terms of "dedication."

According to Iowa case law, dedication requires three elements: (1) intent to dedicate, (2) dedication, and (3) acceptance by the public or the party to whom the dedication is made. *De Castello*, 171 Iowa at 21, 153 N.W. at 355. Dedication can be either express or implied. *Id.* "An express dedication is evidenced by some explicit or positive declaration, or manifestation of intent to surrender the land." *Id.* An implied dedication is shown "by some act or course of conduct on the part of the owner from which a reasonable inference of intent may be drawn." *Id.* Both express and implied dedication require a showing of "some unequivocal act indicating clearly an intent" to dedicate the property, and an "actual setting aside of the physical property to the public use." *Id.* at 22, 153 N.W. at 355.

"[T]he dedication must be to the public use, and the acceptance must likewise be by the public." *Henry Walker Park Ass'n*, 249 Iowa at 1256, 91 N.W.2d at 710. The acceptance may be by some formal action or by public use. *Id.* at 1253, 91 N.W.2d at 708. Acceptance of the dedication may be implied. *De Castello*, 171 Iowa at 22, 153 N.W. at 355. For example, the party accepting the dedication may do "some act which unequivocally shows an intent to assume jurisdiction over the thing dedicated." *Id.* at 23, 153 N.W. at 355.

The extent of the dedication is determined from all the facts and circumstances surrounding the situation. *Id.* at 22, 153 N.W. at 355. Evidence necessary to establish dedication

> may not be predicated on anything short of deliberate, unequivocal, and decisive acts and declarations of the owner, manifesting a positive and unmistakable intention to permanently abandon his property to the specific public use.
>
> . . . .
>
> In order to constitute a dedication, the evidence must be clear, satisfactory, and convincing, and the acts proved must not be consistent with any other construction than that of dedication; and the same rule applies to the acceptance of the dedication. Mere permissive use of a way, no matter how long continued, will not amount to a dedication. The user is presumed to be permissive, and not adverse.

*Culver v. Converse*, 207 Iowa 1173, 1175, 224 N.W. 834, 835–36 (1929) (citations omitted).

The district court first determined that the United States awarded the cannon as a gift to the GAR, and the GAR accepted the cannon in 1911. Those two facts are undisputed.

The court also determined "no genuine issue of material fact exists as to

GAR's intent to lawfully transfer title in the cannon to the [American] Legion." We agree. GAR minutes dated August 26, 1920, indicate that the GAR transferred its property, which included "one cannon," to the American Legion. The same minutes further indicate that all of the property listed (eleven guns, thirty-two tents, one cannon, and one flag) *except* the cannon, was "to be returned to Cass Co. Veterans' Association, in case the Legion does not continue to have charge of the Reunions." (Presumably, "reunions" referred to reunions of Civil War veterans.) In short, as the district court concluded, this evidence establishes as a matter of law that the GAR gave the cannon to the American Legion in 1920.

The district court next addressed whether the cannon was ever dedicated to the public. Given the high level of proof required on this element, we agree with the district court that as a matter of law there was no such dedication. There was no evidence that the GAR or the American Legion ever surrendered the cannon to public use. There is no evidence of an express dedication, such as a public dedication ceremony in which either the GAR or the Legion unequivocally gave up control of the cannon for public use.

The "dedicated to" plaques on the concrete pedestal make no declaration or reservation to the public in general. The "dedicated to" language in this context is consistent with a symbolic gesture. *See, e.g., Webster's Encyclopedic Unabridged Dictionary* 520 (1994) (defining "dedicate" to mean in one sense "to offer formally (a book, piece of music, etc.) to a person, cause, or the like in testimony of affection or respect, as on a prefatory page"). In that sense, the "dedicated to" language does not begin to approach the level of evidence "manifesting a positive and unmistakable intention to permanently abandon" the cannon. *See Culver,* 207 Iowa at 1175, 224 N.W. at 835.

Moreover, there is no evidence of an acceptance of such dedication by the public. What record there is on this point indicates the American Legion has maintained the cannon since it received it in 1920 and has determined where and how the cannon would be displayed. The city has done nothing that would "unequivocally show[ ] an intent to assume jurisdiction" over the cannon. *See De Castello,* 171 Iowa at 23, 153 N.W. at 355. To the contrary, the city denied possession or ownership of the cannon, and stated it would not "bring any action" regarding the cannon.

## VI. Disposition.

While we understand the plaintiffs' desire to keep this historic piece of property in Griswold, the evidence falls considerably short of generating a genuine issue of material fact on the issue of dedication. The district court therefore correctly granted the American Legion's motion for summary judgment. Accordingly, we affirm its ruling.

**AFFIRMED.**