# IN THE COURT OF APPEALS OF IOWA

No. 19-1681
Filed June 16, 2021

**WILLARD B. MCNAUGHTON,**
    Plaintiff-Appellant,

**vs.**

**STANLEY E. CHARTIER, JEANINE K. CHARTIER, CHAR-MAC, INC., CITY OF LAWTON and ABILIT HOLDINGS, LLC,**
    Defendants-Appellees.
_____

**STANLEY E. CHARTIER, JEANINE K. CHARTIER and CHAR-MAC, INC.,**
    Counterclaim Plaintiffs,

**vs.**

**CITY OF LAWTON,**
    Counterclaim Defendant.
_____

        Appeal from the Iowa District Court for Woodbury County, Jeffrey A. Neary, Judge.

        Willard McNaughton appeals an order declaring the parties' rights in an easement. **REVERSED AND REMANDED.**

        Angie J. Schneiderman of Moore, Corbett, Heffernan, Moeller & Meis, L.L.P., Sioux City, for appellant.

        Chad Thompson of Thompson, Phipps & Thompson LLP, Kingsley, for appellees Stanley E. Chartier, Jeanine K. Chartier, and Char-Mac, Inc.

        Kevin H. Collins and Sarah J. Gayer of Nyemaster Goode, PC, Cedar Rapids, for appellee AbiliT Holdings, LLC.

        Considered by Doyle, P.J., and Mullins and Greer, JJ.

**MULLINS, Judge.**

Willard McNaughton appeals an order declaring the parties' rights in an easement. He argues the trial court erred in (1) concluding he publicly dedicated a portion of the easement to the City of Lawton (city), (2) determining in the alternative that the easement was appurtenant to adjoining property, and (3) awarding common law attorney fees to the defendants.

## I.      Background Facts and Proceedings

McNaughton has lived off Highway 20 in Lawton, Iowa, since 1998. His home is situated south of Highway 20 and faces the east. When he purchased the home, its driveway was to the east of the house and ran north to Highway 20. The driveway proceeded to a one-stall garage located at the south of the driveway.[1] The property to the east was owned by another individual, and it was used for agricultural purposes.

The individual defendants, Jeanine and Stanley Chartier, who own Char-Mac, Inc. (collectively Chartiers), are McNaughton's sister and brother-in-law. At some point, McNaguhton and the Chartiers began discussing the possibility of the latter buying the property to the east, upon which they intended to construct an assisted-living facility, and McNaughton's driveway would be used as an access point to the property. In September 1999, the parties entered into an easement agreement in which McNaughton conveyed the Chartiers "an easement for ingress and egress over and across" McNaughton's property, said easement being "for the exclusive use and benefit of Chartier[s], and the residents, guests and other

---

[1] In 2001, McNaughton moved his garage to the south side of the house and situated it facing east.

invitees of the assisted living facility located on Chartier[s'] property." The agreement provided "[t]he easement rights granted herein may not be assigned by Chartier[s] to any other party or parties without the express written consent of McNaughton or his successors or assigns," and the agreement "creates a 'private' easement granted for the use and benefit of the parties . . . and it is not to be construed as an easement for the use and benefit of the general public." The agreement could "not be modified except by written instrument executed by all of the parties . . . or by their legal successors and/or assigns."[2]

The Chartiers purchased the east property around the same time the parties entered the easement agreement. Apparently pursuant to the wishes of the department of transportation, the driveway was reconstructed and moved slightly to the east. Ultimately, the easement allowed the Chartiers and their invitees to use an eighty by thirteen foot portion of the concrete portion of the driveway on McNaughton's property,[3] which attached to an adjacent frontage road on the Chartiers' property, East Char-Mac Drive, which runs parallel to Highway 20 and was constructed by the city. According to McNaughton's testimony, he only granted the Chartiers an easement because "they were never going to sell it and they were going to make sure [he] wasn't wronged." McNaughton never prevented anyone from using the easement. As the district court pointed out, "the easement has been subject to the free and generally unrestricted use by the public since the [assisted-living] facility was constructed and the East Char-Mac Drive was

---

[2] The easement documents were not properly recorded until 2018, when the issues precipitating this litigation began to arise.

[3] It appears the easement also extended ten feet to the west of the concrete.

installed" and "McNaughton did not take any steps to convey to the public the private nature of the easement or the separate identification of his property within the easement area to properly inform the public."

In 2003, the Chartiers attempted to publicly dedicate East Char-Mac Drive to the city, but the city declined. However, the city did accept East Char-Mac Drive as a public dedication in 2012. Also in 2012, the Chartiers conveyed the east property to Char-Mac, Inc., their jointly owned business entity. McNaughton testified he was approached by the city "[a]t least three times," about publicly dedicating the easement, but he declined because he "didn't want to give up ownership . . . or control of it." In 2013, an outbuilding was constructed on the Chartiers' property just southwest of the assisted-living facility. That building was accessed by continuing south beyond the easement and going across McNaughton's property. However, the building can be accessed without passing over McNaughton's property, and a boulder wall was installed near the property line after this litigation was initiated to apparently direct any traffic away from McNaughton's property. McNaughton agreed in his trial testimony there is no reasonable alternative to access the care facility other than by using the inlet from Highway 20.

In late 2017 or early 2018, Jeanine began experiencing health issues and decided it was time to retire. The Chartiers hired a broker to assist in finding a buyer for their property and eventually entered discussions with AbiliT Holdings, LLC (AbiliT) about the latter purchasing the east property and assisted-living facility. The Chartiers advised AbiliT of the easement situation. Upon investigation, it was discovered the easement agreement had not been properly

recorded. Thereafter, in or about February 2018, Jeanine approached McNaughton with a document entitled "Clarification of Easement," requesting him to sign his agreement that the facility "and any heirs or successors or assigns" "retain[] the right to access Highway 20 through the . . . easement." Jeanine offered McNaughton $15,000.00 to sign off. McNaughton declined to sign the clarification, but he recorded the original easement agreement shortly thereafter. McNaughton also advised Jeanine he had no issue with the potential sale and would not stand in the way. However, McNaughton made various offers to Jeanine to secure his compliance. He requested Jeanine personally pay him $100,000.00 and, as Jeanine was the named executor to their sister's estate, McNaughton requested Jeanine to guarantee he could purchase fifty acres of the sister's farm. He also requested the Chartiers purchase his property for $410,000.00 or pay him $160,000.00 and he would retain his property. Lastly he requested the Chartiers to convey the remaining twelve acres of their property that they did not convey to AbiliT to McNaughton. The Chartier's found all of McNaughton's requests unreasonable and denied them.

Ultimately, in 2018, the Chartiers sold the east property to AbiliT. The warranty deed conveyed property described as "Lot One (1), Char-Mac First Addition to the City of Lawton, Woodbury County, Iowa" to AbiliT. The evidence shows that conveyance does not include the easement on McNaughton's property.

Prior to closing of the sale, McNaughton initiated the litigation precipitating this appeal. In his petition for declaratory judgment, injunctive relief, and damages, McNaughton stated he "has not provided express written consent to the assignment of the rights under the easement to Char-Mac, Inc. or anyone else"

and "Char-Mac, Inc.'s use of the easement . . . as well as McNaughton's property south of the easement, has caused, and continues to cause, damages to McNaughton." McNaughton requested a declaration as to the Chartiers' right to use the easement and area south of the easement, as well as injunctive relief and damages. In their answer, the Chartiers named the city as a third-party defendant. McNaughton subsequently amended his petition to name AbiliT as a defendant, also claiming he did not authorize assignment of the easement to AbiliT and the entity's use of the easement and property south thereof caused him damages. The Chartiers were required to indemnify AbiliT for costs incurred as a result of the litigation. The Chartiers requested an award of common law attorney fees and costs.

The matter proceeded to trial in July 2019. In its ruling, the court agreed with the defendants that the paved portion of the easement was publicly dedicated to the city and McNaughton's rights thereto were "terminated and extinguished." The court also agreed with the defendants that the easement was appurtenant in nature and therefore ran with the land. The court found McNaughton's motives in instituting this litigation constituted bad faith as "vexatious and wanton," as evidenced by his excessive demands and desire to cash in on the transaction between the Chartiers and AbiliT. The court ordered the Chartiers to submit an attorney-fee affidavit. McNaughton filed a motion to reconsider, enlarge, or amend, pursuant to Iowa Rule of Civil Procedure 1.904(2), which was denied. McNaughton resisted the Chartiers' application for attorney fees. Among other things, McNaughton argued he should not be obligated to pay fees attributable to AbiliT's representation, as he was not a party to the Chartiers' agreement to

indemnify the entity. He also complained of the lack of detail in the attorney fee itemizations and the requested award was excessive. The court granted the Chartiers' attorney fee request in its entirety, awarding $70,604.14 attributable to counsel for both the Chartiers and AbiliT.

McNaughton appeals.

## II. Standard of Review

This matter was tried in equity, so our review is de novo.[4] Iowa R. App. P. 6.907; *Myers v. Myers*, 955 N.W.2d 223, 229 (Iowa Ct. App. 2020). Review of "an award of attorney fees allowed under the court's equitable powers" is also de novo. *In re Guardianship of Radda*, 955 N.W.2d 203, 208 (Iowa 2021); *accord Hockenberg Equip Co. v. Hockenberg's Equip. & Supply Co.*, 510 N.W.2d 153, 158 (Iowa 1993) ("The determination of a common law attorney fee award rests in the court's equitable powers."). Under a de novo standard of review, "[w]e examine the entire record and adjudicate rights anew on the issues properly presented." *Alcor Life Extension Found. v. Richardson*, 785 N.W.2d 717, 722 (Iowa Ct. App. 2010). We give weight to the district court's factual determinations, especially concerning witness credibility, but they do not bind us. *Myers*, 955 N.W.2d at 229.

## III. Analysis

### A. Public Dedication

McNaughton challenges the court's determination he publicly dedicated the easement area to the city. "Dedication is a question of fact and must be proven

---

[4] AbiliT asserts the matter was tried at law and should be reviewed for correction of errors at law. While the proceedings had both equitable and legal flavors, the taste of equity is more pungent, so we review de novo.

by the party relying upon it." *Marksbury v. State*, 322 N.W.2d 281, 284 (Iowa 1982) (citations omitted).

> The elements necessary to establish an express dedication are (1) an appropriation of the land by the owner for a public use, evidenced by a positive act or declaration manifesting an intent to surrender the land to the public; (2) an actual parting with the use of the property to the public; and (3) an actual acceptance of the property by the public.

*Id.*

The first element "turns on the intent of the offeror or dedicator." *Id.* A dedication for public use

> shall be for the use of the public at large, that is, the general, unorganized public, and not for one person or a limited number of persons, or for the exclusive use of restricted groups of individuals. There may be a dedication for special uses, but it must be for the benefit of the public. Properly speaking, there can be no dedication to private uses or for a purpose bearing an interest or profit in the land.

*Id.* at 285 (quoting 23 Am. Jur. 2d *Dedication* § 5 (1965)). A dedication may be either express or implied. *Sons of the Union Veterans of the Civil War v. Griswold Am. Legion Post 508*, 641 N.W.2d 729, 734 (Iowa 2002). An express dedication may be shown by an explicit or positive declaration or by a manifestation of intent to dedicate the land to the public. *Id.* "An implied dedication is shown 'by some act or course of conduct on the part of the owner from which a reasonable inference of intent may be drawn.'" *Id.* (quoting *De Castello v. City of Cedar Rapids*, 153 N.W. 353, 355 (Iowa 1915)). Whether a dedication is express or implied, the intent to dedicate "must be unmistakable in its purpose." *Merritt v. Pete*, 24 N.W.2d 757, 762 (Iowa 1946) (quoting *Dugan v. Zurmuehlen*, 211 N.W.

986, 988 (Iowa 1927)). "There can be no dedication unless there is a present intent to appropriate the land to public use." *De Castello*, 153 N.W. at 356.

The intent alone, however, is not sufficient. *Schmidt v. Town of Battle Creek*, 175 N.W. 517, 519 (Iowa 1919). "There must be a parting with the use of the property to the public, made in praesenti, manifested by some unequivocal act, indicating clearly an intent that it be so devoted." *Id.* A dedication "may not be predicated on anything short of deliberate, unequivocal, and decisive acts and declarations of the owner, manifesting a positive and unmistakable intention to permanently abandon his property to the specific public use." *Culver v. Converse*, 224 N.W. 834, 835 (Iowa 1929). Furthermore, "the acts proved must not be consistent with any other construction than that of dedication." *Id.*

The district court seemed to base its appropriation finding on McNaughton consenting to the city installing a public street and improvements, McNaughton failing to restrict public use and suffering no damage from the same, and members of the public being able to reasonably conclude the easement was public. In our analysis, we first note the easement agreement only allows "for the exclusive use and benefit of Chartier[s], and the residents, guests and other invitees of the assisted living facility located on Chartier[s'] property"; states "[t]he easement rights granted herein may not be assigned by Chartier[s] to any other party or parties without the express written consent of McNaughton or his successors or assigns"; and "creates a '*private*' easement granted for the use and benefit of the parties . . . *and it is not to be construed as an easement for the use and benefit of the general public*." (Emphasis added.) And, while McNaughton did not restrict public use, "evidence of public use without more is not sufficient to indicate such a

clear and unequivocal act on the owner's part to establish the intent to dedicate." 3 John Martinez, Local Government Law § 17:3 (Oct. 2020 update).  Further, "Mere permissive use of a way, no matter how long continued, will not amount to a dedication. The user is presumed to be permissive, and not adverse." *Sons of the Union Veterans*, 641 N.W.2d at 734 (quoting *Culver*, 224 N.W. at 836).  And McNaughton was approached by the city at least three times about publicly dedicating the easement area, and he declined on each occasion.  *See* 4 Tiffany Real Property § 1102 (3d ed. Sept. 2020 update) ("Tacit dedication does not result where active opposition is directly communicated by the landowner to the governing body.").

Upon our de novo review, we find the evidence insufficient to support the district court's conclusion McNaughton publicly dedicated the easement area.

B.      Appurtenant Easement

Having found the evidence insufficient to show a public dedication, we turn to McNaughton's challenge to the court's determination the easement was appurtenant to the east property.

> An appurtenant easement is an incorporeal right which is attached to, and belongs with, some greater or superior right—something annexed to another thing more worthy and which passes as an incident to it.  It is incapable of existence separate and apart from the particular land to which it is annexed.

*Rank v. Frame*, 522 N.W.2d 848, 852 (Iowa Ct. App. 1994) (quoting *Wymer v. Dagnillo*, 162 N.W.2d 514, 517 (Iowa 1968)).  "Easements appurtenant pass with the description of the property to which they are appurtenant without specific designation, and the purchaser of the servient property takes subject to the easement without express reservation."  *Id.*  "A servitude should be interpreted to

give effect to the intention of the parties ascertained from the language used in the instrument, or the circumstances surrounding creation of the servitude, and to carry out the purpose for which it was created." Restatement (Third) of Prop.: Servitudes § 4.1(1) (Am. L. Inst. Oct. 2020 update). The benefit of a servitude is not transferable if personal, and "[a] benefit is personal if the relationship of the parties, consideration paid, nature of the servitude, or other circumstances indicate that the parties should not reasonably have expected that the servitude benefit would pass to a successor to the original beneficiary." *Id.* § 4.6(2).

In determining the easement was not private, the district court identified the easement agreement allowed for "ingress and egress." The court recognized the agreement stated the easement is "granted for the use and benefit of the parties . . . and it is not construed as an easement for the use and benefit of the public." Citing *McNally & Nimergood v. Neumann-Kiewit Constructors, Inc.*, the court found the "ingress and egress" language "more specific and therefore trumps the generalized 'private' easement statement." *See* 648 N.W.2d 564, 573 (Iowa 2002) (noting specific contractual clauses trump general clauses). We are unable to agree with the district court's reasoning. The language allowing for ingress and egress was general, and the language restricting use to the benefit of the parties and not of the general public was more specific. The public's use was specifically for the benefit of the Chartiers. So that restrictive language trumps the general language allowing "ingress and egress" to the general public. Upon our plain reading of the easement agreement, the clear intent of the parties was to create a private, personal, and non-transferable easement, which is not appurtenant to the east property. *See* Restatement (Third) of Prop.: Servitudes § 4.6(2).

The court also seemed to base its finding of appurtenancy on necessity, which relates to easements by implication or necessity. *See Kane v. Templin*, 138 N.W. 901, 902 (Iowa 1912) ("It must be conceded that easements by implication are to be strictly limited to rights which in the very nature of the case must be presumed to have been in the minds of the parties concerned, appurtenant on the one hand and servient on the other; and the necessity of the use for the convenient enjoyment of the premises to which the easement is claimed as appurtenant is a material consideration in determining whether such easement is to be implied. Nevertheless, an easement by implication is a different thing from an easement by necessity, as the latter term is properly used. It must be conceded, also, that in some courts easements by implication have been limited to those existing strictly by necessity." (citations omitted)). While the evidence shows the inlet from Highway 20 is the only reasonably accommodating access point, the evidence also shows the inlet is thirty-five feet wide, with thirteen feet falling on McNaughton's property, and the remaining twenty-two feet falling on the east property. Although accessing McNaughton's side of the driveway is more convenient and creates a more reasonable driveway entrance, use of his property is unquestionably not necessary to allow ingress and egress to the east property.

Upon our de novo review, we find the easement was personal, private, non-transferable, not appurtenant, and does not run with the land.

C.    Attorney Fees

McNaughton also challenges the court's award of common law attorney fees. While McNaughton was steadfast in trying to profit from the transaction, he was within his rights to use the transferability of the easement as a bargaining chip.

The district court's reliance on a "genuine dispute" is not on point.  We are unable to conclude he "acted in bad faith, vexatiously, wantonly, or for oppressive reasons."  *Hockenberg*, 510 N.W.2d at 158.  Furthermore, the easement language does not state any parameters to limit the reasonableness of his withholding consent.  Our disposition also renders him the successful party, and we see no reason he should foot the bill for the losing side.  We reverse the award of attorney fees.

## IV.    Conclusion

We conclude (1) the evidence was insufficient to support a finding of public dedication, (2) the easement is not appurtenant in nature, and (3) the defendants were not entitled to an award of common law attorney fees.  We reverse the district court on each of those points, and we remand the matter to the district court for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**