# IN THE SUPREME COURT OF IOWA

No. 19–1681

Submitted November 17, 2021—Filed June 24, 2022

**WILLARD B. McNAUGHTON,**

Appellant,

vs.

**STANLEY E. CHARTIER, JEANINE K. CHARTIER, CHAR-MAC, INC., CITY OF LAWTON,** and **ABILIT HOLDINGS, LLC,**

Appellees.

_____

**STANLEY E. CHARTIER, JEANINE K. CHARTIER,** and **CHAR-MAC, INC.,**

Counterclaim Plaintiffs,

vs.

**CITY OF LAWTON,**

Defendants to Counterclaim.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Woodbury County, Jeffrey A. Neary, Judge.

The defendant requests further review of a court of appeals decision declaring the parties' rights in an easement and reversing an award of attorney

fees under the common law. **DECISION OF COURT OF APPEALS AFFIRMED; DISTRICT COURT JUDGMENT REVERSED AND CASE REMANDED.**

McDonald, J., delivered the opinion of the court, in which Appel, Waterman, Mansfield, and Oxley, JJ., joined. McDermott, J., filed a dissenting opinion, in which Christensen, C.J., joined.

Angie J. Schneiderman and Coyreen R. Weidner of Moore, Corbett, Heffernan, Moeller & Meis, L.L.P., Sioux City, for appellant.

Chad C. Thompson of Thompson, Phipps & Thompson LLP, Kingsley, for appellees Stanley E. Chartier, Jeanine K. Chartier, and Char-Mac, Inc.

Kevin H. Collins and Sarah J. Gayer of Nyemaster Goode, PC, Cedar Rapids, for appellee AbiliT Holdings, LLC.

Douglas L. Phillips of Klass Law Firm, L.L.P., Sioux City, for appellee City of Lawton.

**McDONALD, Justice.**

Willard McNaughton entered into an easement agreement with Jeanine and Stanley Chartier to allow a small part of a road to pass through McNaughton's property. The road was used to access the Chartiers' business on their adjacent property. The agreement provided that it was a " 'private' easement granted for the use and benefit of the parties . . . and [was] not to be construed as an easement for the use and benefit of the general public." When the Chartiers later sold their business and property, litigation regarding a paved portion of the easement ensued. The district court held McNaughton's right and interest in the disputed area had been extinguished. In the district court's view, McNaughton had "dedicated [a] concrete portion of the easement to the [c]ity" because, among other things, the public had used the easement as the parties had agreed and because McNaughton had "never attempted to restrict the use of the concrete portion of the easement area." The court of appeals reversed the district court, and we granted the Chartiers' application for further review. For the reasons expressed below, we affirm the decision of the court of appeals.

I.

In 1998, McNaughton purchased property bordering the southern edge of the City of Lawton (City). The property was located directly south of U.S. Highway 20 (which runs east to west) and was accessible from the highway via a private driveway leading to a garage on McNaughton's property.

In 1999, Jeanine and Stanley Chartier, McNaughton's sister and brother-in-law, purchased the adjoining lot east of McNaughton's property. The

Chartiers purchased the property to develop an assisted living facility. To get access from the assisted living facility to the highway, McNaughton and the Chartiers sought approval from the Iowa Department of Transportation (IDOT) for a special access connection. IDOT approved the request but required the special access connection to line up directly with Cedar Street, a north–south street located across the highway from McNaughton's property. The Chartiers agreed to the location of the special access connection, which was to be a short road running south off Highway 20 abutting McNaughton's driveway. The short road connected with an east–west road, now known as East Char-Mac Drive, which provided access to the Chartiers' business and property. Below is a trial exhibit depicting the properties and roadways at the time of trial.



To accommodate the special access connection to Highway 20, the Chartiers entered into a written easement agreement with McNaughton in 1999.

The easement gave the Chartiers and their business invitees the right to access a small portion of McNaughton's property. The easement extended twenty-three feet west from the Chartiers' property line and eighty feet south from the highway. As relevant here, the easement agreement (which referred to the Chartiers collectively as "Chartier") provided:

> 3. Chartier desires to acquire an easement for ingress and egress across a portion of McNaughton's real estate to provide Chartier with an access between their real estate and U.S. Highway 20.

> 4. McNaughton is willing to grant an easement to Chartier pursuant to the terms and conditions set forth in this Agreement.

> . . . .

> 6. **The Easement rights granted herein are for the exclusive use and benefit of Chartier, and the residents, guests, and other invitees of the assisted living facility located on Chartiers' property.** The easement rights granted herein may not be assigned by Chartier to any other party or parties without the express written consent of McNaughton or his successors or assigns. **It is specifically understood that this Agreement creates a "private" easement granted for the use and benefit of the parties identified in this paragraph and is not to be construed as an easement for the use and benefit of the general public.**

> 7. As additional consideration for the grant of easement herein, Chartier shall be obligated to take all action necessary to [e]nsure that the town of Lawton, Iowa, becomes contractually obligated to maintain the easement area for use consistent with the easement rights granted hereunder.

> 8. This instrument may not be modified except by written instrument executed by all of the parties hereto or by their legal successors and/or assigns.

(Emphases added.) Shortly after McNaughton and the Chartiers entered into the easement agreement, the City paved and completed other improvements to the

access road. The paved access road is thirty-six feet across. Only thirteen feet by sixty feet of the paved access road is within the parties' private easement. Traffic entering the assisted living facility now treats the portion of the access road within the parties' private easement as a southbound lane before turning east onto East Char-Mac Drive.

The City asked McNaughton on several occasions in the early 2000s to dedicate the paved portion of the easement to the City. McNaughton refused each request. His testimony regarding his refusal was corroborated by a letter he wrote to the City in January 2004 regarding maintenance of the street. In that letter, he referred to the "easement that [he] gave [his] sister." He explicitly rejected the City's request that he give the City an "easement [through his] property." He said "there is not a chance in hell that I will cooperate with any concession to the town." It appears one of the reasons McNaughton refused to dedicate the easement to the City was the City's failure to maintain the paved portion of the easement. The private easement agreement required the Chartiers to ensure the City would maintain the paved portion of the easement. The City sent McNaughton a letter promising to provide snow removal, maintenance, and repairs. McNaughton testified the City removed snow only a few times and generally had failed to maintain the paved portion of the easement. For their part, the Chartiers did not dedicate East Char-Mac Drive to the City until 2012.

Around 2018, Jeanine began experiencing health problems that necessitated the sale of the Chartiers' business and property. AbiliT Holdings, LLC, emerged as a potential buyer. The Chartiers informed AbiliT about the

easement. They discovered McNaughton had never recorded the easement agreement. Jeanine asked McNaughton to sign a Clarification of Easement, which stated the Chartiers' successors or assigns could access Highway 20 using the easement. She offered McNaughton $15,000 in exchange for his agreement. McNaughton refused. McNaughton then filed a copy of the easement agreement with the county recorder.

Although McNaughton would not sign the Clarification of Easement, McNaughton told the Chartiers he would not stand in the way of the sale to AbiliT. The Chartiers and AbiliT finalized the sale in April 2018. The Chartiers did not assign or attempt to assign any rights in the easement to AbiliT. After the deal was finalized, McNaughton demanded various forms of compensation from the Chartiers for the easement. He initially asked for $100,000 and later asked for $160,000. He next offered to sell his entire property (including his home) for $410,000. He later said he would convey the easement in exchange for a guarantee from Jeanine that he could purchase fifty acres of farmland from the estate of their deceased sister, for which Jeanine served as executor. The Chartiers declined each proposal.

After these failed negotiations regarding the rights in the private easement, McNaughton filed a petition for declaratory judgment, injunctive relief, and damages against the Chartiers, their business entity Char-Mac, Inc., and AbiliT. McNaughton sought a declaration that he had not consented to any assignment of the private easement and that AbiliT did not have any rights under the easement agreement. The Chartiers answered and filed a counterclaim against

McNaughton. The Chartiers sought injunctive relief and common law attorney fees based on McNaughton's alleged improper motives in bringing the suit.

The Chartiers also named the City as a third-party defendant, contending the City had rights in the easement and was an indispensable party to the litigation. The City contested this and moved to dismiss the claims against it. The City argued it was not a necessary party to the dispute because it was "not a party to the easement agreement," did "not own any portion of the property covered by the agreement," and the easement agreement "granted no rights to the City." The City argued the outcome of the litigation between the parties would have no impact on the City's rights. Initially, the district court denied the City's motion to dismiss. The City renewed its motion on the morning of trial. The City argued it "wasn't a part of the easement agreement," that "the City doesn't own the property at issue," and that "the City [wasn't] really concerned about how the [c]ourt decide[d] the matter." After hearing from the parties, the district court agreed and dismissed the City from the case.

The matter was tried to the court without the City participating in the trial. The district court found McNaughton had "dedicated the concrete portion of the easement to the City" because, among other things, the public had used the easement as the parties had agreed and because McNaughton had "never attempted to restrict the use of the concrete portion of the easement area." The district court alternatively held that the easement was appurtenant to the Chartiers' property, meaning the easement was created to benefit the Chartiers' property and runs with that property to successive owners. As a result, the

district court held that the easement passed with the property to AbiliT. Finally, the district court found McNaughton acted in bad faith in pursuing the litigation. The district court awarded the Chartiers common law attorney fees due to McNaughton's "bad faith" and "vexatious" conduct.

McNaughton timely appealed, and we transferred the matter to the court of appeals. The court of appeals found insufficient evidence to establish public dedication, relying particularly on language in the easement agreement that the easement was "for the exclusive use and benefit" of the Chartiers and their invitees and was "not to be construed as an easement for the use and benefit of the general public." The court of appeals also found persuasive McNaughton's uncontroverted testimony that he repeatedly refused the City's request to dedicate the easement to the City. As to the issue of whether the easement was appurtenant, the court of appeals similarly reversed. The court of appeals determined that while McNaughton's easement made access more convenient, the easement agreement itself indicated the easement was not appurtenant, and the easement was not necessary to access the assisted living facility. Finally, the court of appeals reversed the award of attorney fees, finding that McNaughton acted within his rights in attempting to receive compensation for a potential assignment of the easement. We granted further review.

## II.

Our standard of review in a declaratory judgment action usually depends on how the case was tried in the district court. *Passehl Est. v. Passehl*, 712 N.W.2d 408, 414 (Iowa 2006). Here, the district court provided declaratory and

equitable relief regarding the parties' respective rights in the easement. Under the circumstances, we conclude this was an equitable action and will review the matter de novo. *See* Iowa R. App. P. 6.907; *In re Marriage of Beecher*, 582 N.W.2d 510, 512 (Iowa 1998). "In equity cases, the trial court's findings of fact are not binding on us, but we give them weight, especially when they concern a witness's credibility." *Newhall v. Roll*, 888 N.W.2d 636, 640 (Iowa 2016); *see* Iowa R. App. P. 6.904(3)(*g*).

## III.

Like the court of appeals, we conclude the district court erred in concluding the Chartiers and AbiliT proved that McNaughton "dedicated the concrete portion of the easement to the City." " 'Dedication' is a term of art, and is a devotion of property to a public use by an unequivocal act of the owner of the property and an acceptance of that dedication by the public." 11A Eugene McQuillin, *The Law of Municipal Corporations* § 33:2, Westlaw (3d ed. updated Sept. 2021) [hereinafter McQuillin, *Municipal Corporations*]. "A 'dedication' is an uncompensated transfer of an interest in private property to the public." *Id.* The party seeking to prove a public dedication thus must establish the following by cogent, clear, and convincing evidence: "(1) intent to dedicate, (2) dedication, and (3) acceptance by the public or the party to whom the dedication is made." *Sons of Union Veterans of Civ. War, Dep't of Iowa v. Griswold Am. Legion Post 508*, 641 N.W.2d 729, 734 (Iowa 2002). There is not cogent, clear, and convincing evidence establishing an intent to dedicate or acceptance of any purported dedication in this case.

A.

"The intention of the owner to dedicate the property . . . [is] essential to a complete dedication." McQuillin, *Municipal Corporations* § 33:2. The owner's intent to dedicate must "exist[] at the beginning of the use, and continue[] through the whole period necessary to evince a conclusive dedication." *Sioux City v. Tott*, 60 N.W.2d 510, 516 (Iowa 1953) (quoting *Dugan v. Zurmuehlen*, 211 N.W. 986, 989 (Iowa 1927)); *see* McQuillin, *Municipal Corporations* § 33.35 ("[A] court considers the acts or conduct at the time of the dedication, rather than at any time thereafter."). Intent to dedicate can be express or implied. *Sons of Union Veterans*, 641 N.W.2d at 734. "An express dedication is evidenced by some explicit or positive declaration, or manifestation of intent to surrender the land." *Id.* (quoting *De Castello v. City of Cedar Rapids*, 153 N.W. 353, 355 (Iowa 1915)). An implied dedication is evidenced "by some act or course of conduct on the part of the owner from which a reasonable inference of intent may be drawn." *Id.* (quoting *De Castello*, 153 N.W. at 355).

Whether a grantor's intent to dedicate land for public use is express or implied, the evidence of intent must be clear and unmistakable. *See Merritt v. Peet*, 24 N.W.2d 757, 762 (Iowa 1946) (stating the act of public dedication "must be unmistakable in its purpose"). This is a high burden. "The intention of the owner to set apart the lands for the use of the public as a highway—the *animus dedicandi*—is the fundamental principle, the very life of dedication." *Tott*, 60 N.W.2d at 516 (quoting *Davis v. Town of Bonaparte*, 114 N.W. 896, 898 (Iowa 1908)). A public dedication "may not be predicated on anything short of

deliberate, unequivocal, and decisive acts and declarations of the owner, manifesting a positive and unmistakable intention to permanently abandon his property to the specific public use." *Sons of Union Veterans*, 641 N.W.2d at 734 (quoting *Culver v. Converse*, 224 N.W. 835 (Iowa 1929)). If the grantor's acts are in any way "equivocal[] or do not clearly and plainly indicate the intention to permanently abandon the property to the use of the public, they are insufficient to establish a case of dedication." *De Castello*, 153 N.W. at 355 (quoting *Holdane v. Trs. of the Vill. of Cold Spring*, 21 N.Y. 474, 478 (1860)).

1.

There is not cogent, clear, convincing, unequivocal, or unmistakable proof that McNaughton intended a public dedication of the easement at issue "at the beginning of the use." *Tott*, 60 N.W.2d at 516 (quoting *Dugan*, 211 N.W. at 989). In fact, there is cogent, clear, convincing, unequivocal, and unmistakable proof of the opposite.

The easement at issue was created by express agreement of McNaughton and the Chartiers. Where a servitude is created by express agreement of the parties, it must "be interpreted to give effect to the intention of the parties ascertained from the language used in the instrument, or the circumstances surrounding creation of the servitude, and to carry out the purpose for which it was created." *Stew-Mc Dev., Inc. v. Fischer*, 770 N.W.2d 839, 847 (Iowa 2009) (quoting Restatement (Third) of Property: Servitudes § 4.1(1) (Am. Law Inst. 2000) [hereinafter Restatement]). We have thus repeatedly stated that in interpreting easements, "the intention of the parties is of paramount

importance." *Gray v. Osborn*, 739 N.W.2d 855, 861 (Iowa 2007); *see* Iowa R. App. P. 6.904(3)(*n*) ("In the construction of written contracts, the cardinal principle is that the intent of the parties must control, and except in cases of ambiguity, this is determined by what the contract itself says."). "If a grant is specific in its terms, it is decisive of the limits of the easement." *Flynn v. Mich.-Wis. Pipeline Co.*, 161 N.W.2d 56, 61 (Iowa 1968) (quoting 17 Am. Jur. *Easements* § 97).

Here, the language of the instrument plainly and unambiguously establishes the easement was a private easement for the Chartiers' benefit and not a dedication of property rights to the City or the public at large. The easement agreement provides it is a "private" agreement between McNaughton and the Chartiers. The agreement states, "*Chartier* desires to acquire an easement for ingress and egress across a portion of McNaughton's real estate." (Emphasis added.) The agreement provides that McNaughton "is willing to grant an easement *to Chartier*." (Emphasis added.) The conveyance language provides that "McNaughton grants and conveys *to Chartier* an easement for increases and egress." (Emphasis added.) The "easement rights granted" to Chartier were "*for the exclusive use and benefit of Chartier*, and the residents, guests and other invitees of the assisted living facility." (Emphasis added.) The agreement further provides that "the easement rights granted herein may not be assigned by Chartier to any other party or parties without the express written consent of McNaughton." If the parties' intent to create a private easement for the Chartiers was not clear enough from this language, the agreement concludes, "It is specifically understood that this Agreement creates a 'private' easement granted

for the use and benefit of the parties identified in this paragraph and it is not to be construed as an easement for the use and benefit of the general public."

The unambiguous expression of a parties' intent to create a private easement and not a public dedication must be given effect. *See Tott*, 60 N.W.2d at 516; *Mid–Valley Res., Inc. v. Foxglove Props., LLP*, 381 P.3d 910, 918 (Or. Ct. App. 2016) ("[T]he deed conveyed the roadway to the Namitzes and 'their heirs and assigns forever.' That language is not a clear and unequivocal intention to dedicate a *public* right-of-way."); McQuillin, *Municipal Corporations* § 33:42 ("The intent of the dedicator is the foundation and life of all dedications and that intent must be clearly and unequivocally manifested. If the intent is to be gathered from writings, they must clearly manifest the intent to dedicate." (footnote omitted)); *see also City of Alexandria v. Thigpen*, 45 So. 253, 255 (La. 1907) ("As the plaintiff relies on alleged dedication by deeds made with reference to certain maps, the question is whether the intention to dedicate is clearly and unequivocally manifested on the face of the papers."); *Hersh v. Plonski*, 938 A.2d 98, 105 (N.H. 2007) (holding a subdivision plan that referred to a strip of land as a "right-of-way," rather than a "public" street, did "not clearly and unequivocally manifest . . . intent" to dedicate the land to the public); *Wright v. Town of Matthews*, 627 S.E.2d 650, 659 (N.C. Ct. App. 2006) ("The deed failed to specify whether such right-of-way was for purposes of a public or private street, however. As such, the language of the deed does not create a public right-of-way, but only a private one."). Quite simply, "creation of a roadway easement does not

raise a presumption that the road has been dedicated for public use." *Kadlec v. Dorsey*, 233 P.3d 1130, 1131 (Ariz. 2010) (en banc).

2.

Nor is there cogent, clear, convincing, unequivocal, or unmistakable proof that McNaughton subsequently changed his mind and decided to dedicate the easement at issue to the City or the public at large. In fact, there is cogent, clear, convincing, unequivocal, and unmistakable proof of the opposite.

After McNaughton entered into the private easement agreement with the Chartiers, he continued to express his intent that he was not publicly dedicating the easement. The City asked McNaughton on at least three occasions to dedicate the easement, and McNaughton refused the City each time. McNaughton's testimony on this point was uncontroverted. Further, his testimony was supported by contemporaneous documentation in the form of his 2004 letter to the City, in which he stated "there is not a chance in hell that I will cooperate with any concession to the town." "Tacit dedication does not result where active opposition is directly communicated by the landowner to the governing body." *Vaughn v. Williams*, 345 So. 2d 1195, 1198 (La. Ct. App. 1977); *see Sons of Union Veterans*, 641 N.W.2d at 734; McQuillin, *Municipal Corporations* § 33:42.

B.

Despite the lack of evidence establishing a clear and unmistakable intent by McNaughton to dedicate the easement to the public at the time of its creation or subsequent thereto, the district court nonetheless found McNaughton dedicated the "concrete portion of the easement to the City." The district court

reasoned that McNaughton's acquiescence to the public's use of the private easement established sufficient intent to dedicate the easement to the City. We conclude the district court erred in reaching that conclusion.

First, the district court failed to apply controlling authority. Under Iowa law, "[m]ere permissive use of a way, no matter how long continued, will not amount to a dedication." *Culver*, 224 N.W. at 836; *see also* Restatement § 2.16 cmt. *f* ("Permissive uses do not give rise to prescriptive rights . . . ."). We applied this black-letter principle in *State v. Hutchison*, a case involving five defendants who were convicted of misdemeanor criminal trespass after participating in a protest on a road outside an armory. 721 N.W.2d 776, 778 (Iowa 2006). The defendants argued they could not be guilty of criminal trespass because the road outside the armory was a public road and not a private road. *Id.* at 779. In support of this argument, they argued the Army Corps of Engineers (which owned the land) or the Iowa Army National Guard (which leased the land) had dedicated the road to the public. *Id.* at 781. We concluded there was insufficient evidence to establish a public dedication. *Id.* at 782. We explained,

> The record is devoid of any evidence that the Guard or the Corps intended to dedicate the road to the public when the road was first opened for public use or at any time thereafter. At most, the evidence showed permissive use by persons wanting access to the lake or a way around the lake, a fact insufficient to support dedication.

*Id.*

In *Sioux City v. Tott*, we held that a city failed to prove "a common law dedication of a public road, sixty-foot wide across defendant's acreage." 60 N.W.2d at 516. We explained that "[t]he first quest [was] to find evidence

indicating the owner's intention to dedicate the strip." *Id.* There was no direct evidence of intent to dedicate the strip, so we looked at evidence of public use. *Id.* at 517. We concluded the city's maintenance of the roadway and the limited use by the public was insufficient to establish a public dedication as a matter of law. *See id.* (stating dedication "is not established by the evidence of the city's acts of maintenance, and it is not established by the proof of usage").

In *Young v. Ducil*, the plaintiffs brought an action to restrain the defendant property owners from interfering with a claimed easement in a roadway that ran across the defendants' land, which the plaintiffs had used to access their own premises for over twenty years. 176 N.W. 272, 272 (Iowa 1920). The plaintiffs claimed the easement was also used by the general public. *Id.* The evidence at trial indicated that a portion of the roadway on the defendants' land was used by people transacting business at a brickyard and a gristmill located on the defendants' property. *Id.* at 273. Nonetheless, we held this evidence of use by the public was insufficient to establish public dedication of the easement. *Id.* at 275. "The best that can be said for plaintiffs' use is that it was permissive, and this is not sufficient under the statute to sustain a claim of right to a permanent easement in the property . . . ." *Id.*

In *Bradford v. Fultz*, we concluded there was no public dedication where the owner of the property permitted use by the public but expressed the intent that the use was not general but rather was for specific purposes:

> It is elementary law that the intention to dedicate on the part of the owner must be shown, and plainly shown. The opening of a way from a public road over the owner's land to his buildings or his

place of business, though used by the public for the purpose of dealing with the owner, does not confer upon the public an irrevocable right to its use. The right, under such circumstances, is granted for the benefit of the owner—a mere permission or license to the public to pass over it in dealing with the owner—and is revocable by the owner when the purposes for which the right was created have ceased to exist.

While continued use by the public has probative force on the question of dedication to the public, when such use is with the knowledge or consent of the owner, yet it is not sufficient in itself, and of itself to show a dedication, and, in so far as the use suggests a dedication, this suggestion and the probative force of the fact of user is overcome when it is shown that the use by the public was not of a general character, but such only as occurred in dealings with the owner of the land. The use, then, is only permissive—a license by the owner to the use; revocable by the owner when the purposes of its use are ended. . . .

We think that the record in this case discloses the intent and purpose of [the original landowner] in making the road in question, and that was to provide a private way across his own land and for his own use, and we think the law is that user by the public, though it continued for many years, when such use is made only in connection with the use by those for whose benefit it was laid out, does not show a dedication and establishment of it as a public highway. No presumption of dedication arises where it is shown that the road was primarily built for the convenience of the owner, although the public had been allowed to use it for many years in dealing with the owner. Use is only presumptive evidence of dedication, at most, which may be rebutted and is rebutted by facts which satisfy the mind that the use was not general, but for specific purposes, and which show that the use was permissive only so far as the public was concerned; that it was built, primarily, for the use and benefit of the owner.

149 N.W. 925, 928–29 (Iowa 1914).

The present case is materially indistinguishable from these controlling authorities. McNaughton entered into a private easement agreement with his sister but expressly stated the private easement should not be construed as a use for the general public. As in these controlling cases, McNaughton then

permitted the use for the limited purpose to which he agreed. "No length of use of a private road will make it a public highway." *Id.* at 929. These cases are in accord with a leading treatise on the subject:

> In instances when public use is the only evidence of either dedication or acceptance, where the use of the property by the public is not exclusive of the owner's rights, but is consistent and in common therewith, such use by the public is no proof of an intention to dedicate the property to the public, but is permissive only.

McQuillin, *Municipal Corporations* § 33.37. This case more strongly militates against a finding of dedication. Here, unlike in the above-discussed cases, McNaughton repeatedly expressed his intent to *not* dedicate the easement to the public. He did so in the original instrument creating the easement, and he did so when he repeatedly rebuffed the City's request for dedication.

Second, the district court placed McNaughton in an impossible legal situation. The easement agreement permitted use of the easement by the Chartiers and the residents, guests, and other invitees of the assisted living facility. Under the district court's reasoning, however, McNaughton was required to violate the terms of the easement agreement, disallow these permissive uses, and subject himself to suit merely to disestablish an intent to publicly dedicate the easement. This is contrary to Iowa law. *See Krogh v. Clark*, 213 N.W.2d 503, 506 (Iowa 1973) ("It is, of course, true that neither party to an easement may interfere with the rights of the other. The one who enjoys the easement must use it according to its terms; the one who has granted it must not interfere with the rights conferred."); *Schwartz v. Grossman*, 173 N.W.2d 57, 61 (Iowa 1969) (granting injunction against defendant who blocked alleyway over which plaintiff

had easement, finding "wilfull and substantial violation of plaintiff's right to the free and unobstructed use of the alley"). Under the district court's reasoning, every private easement of this type would automatically ripen into a public dedication unless the grantor breaches the terms of the agreement. This outcome is obviously irrational and explains the general rule that permissive use does not give rise to a public dedication or prescriptive rights.[1]

Third, the district court's rationale would have significant implications for a wide array of property rights. One common example involves the public's use of driveways and parking lots on commercial properties. Frequently, one property owner allows the guests, customers, or other invitees of an adjoining property owner to ingress or egress from the property using a single driveway or allows the use of a parking lot. The property owner's grant of permissive use does not ripen into a dedication over time that causes the property owner to lose rights in the property. *See, e.g.*, *Ass'n of Indep. Taxi Operators v. Yellow Cab Co.*, 82 A.2d 106, 110 (Md. 1951) (holding public's continuous use of a driveway to access a railroad depot did not result in public dedication of the way since "the station necessarily operate[d] on a twenty-four-hour basis" and it was "entirely

---

[1] *Pimental v. River Junction Ests., LLC*, 263 A.3d 847, 854 (Conn. App. Ct. 2021) ("[M]ere permission on the part of the owner to the public to use the land as a way, without more, will not constitute an intention to dedicate, since a temporary right to use a private way is in the nature of a mere license, revocable at pleasure, and does not in any sense establish the requisite intent." (alteration in original) (quoting *Mihalczo v. Borough of Woodmont*, 400 A.2d 270, 273 (Conn. 1978))); *Sons of Union Veterans*, 641 N.W.2d at 734; *Weiss v. Borough of S. Bethlehem*, 20 A. 801, 801 (Pa. 1890) ("[M]ere permissive use by the public of a piece of ground left open by the owner in front of his property, and used by him in his own business, and for his own convenience, was not a dedication to public use, and conferred no right upon the public as against the owner.").

impracticable . . . for the employees of the Railroad to stop each vehicle entering the drive to enquire whether it is merely passing through, or whether the occupants have business with the Railroad"); *Sec. Fed. Sav. & Loan Ass'n v. C & C Invs., Inc.*, 448 N.W.2d 83, 87 (Minn. Ct. App 1989) (rejecting claim that property owner's acquiescence in allowing customers and shopping center patrons to pass through property was sufficient to establish dedication of a portion of the property); *Shapiro Bros. v. Jones–Festus Props., L.L.C.*, 205 S.W.3d 270, 278 (Mo. Ct. App. 2006) (holding public's use of a shopping center's parking lot to patronize stores located on the property and as a shortcut between adjacent streets was insufficient to prove dedication).

Fourth, the district court's holding results in a de facto taking of McNaughton's property without just compensation. "The very essence of a dedication is that there is no compensation to the dedicator." *Brown v. Bd. of Cnty. Comm'rs*, 422 N.W.2d 440, 442 (S.D. 1988). Because a dedication is uncompensated, courts must jealously police the doctrine so as to be certain the property owner unambiguously intends to part with his property without consideration:

> The intent to dedicate must be obvious. . . . "Persons who have, from mere kindness, suffered others to enjoy privileges in their lands, have been eventually coerced into parting with them entirely, without compensation, and to yield up as rights what they had previously suffered or allowed as favors, and the simple expression of an intention, has often been distorted into a positive promise, and occasionally to those who have no distinct interest in its performance. Our title to our lands is too important to be lightly lost, upon slight presumptions. Before the owner should be deprived of his property, his intention to part with it should be clearly and unequivocally expressed."

*Friends of Hastain Trail v. Coldwater Dev. LLC*, 205 Cal. Rptr. 3d 270, 286 (Ct. App. 2016) (omission in original) (quoting *Harding v. Jasper*, 14 Cal. 642, 648 (1860)). Finding a dedication in the face of McNaughton's express intent to the contrary does not clear the bar of cogent, clear, and convincing evidence necessary to ensure his property is not taken by the public without just compensation.

C.

In addition to establishing McNaughton intended to dedicate the easement to the public, the Chartiers and AbiliT were required to establish by cogent, clear, and convincing evidence that the public accepted the easement. Acceptance may be express or implied. *Sons of Union Veterans*, 641 N.W.2d at 734. The district court found they proved that the "City of Lawton has accepted the [easement] as a public street (public improvement)." We conclude the district court erred in finding acceptance of the easement by the City or by the general public.

There is no evidence the City expressly accepted the purported dedication of any easement. Indeed, the City's position in this case demonstrates that it has not accepted any dedication of the easement. In the district court, the City argued it was not a necessary party to the dispute because it was "not a party to the easement agreement," did "not own any portion of the property covered by the agreement," and the easement agreement "granted no rights to the City." On the day of trial, the City again explained that it claimed no rights in the easement and wasn't "really concerned about how the [c]ourt decide[d] the matter." The district court's finding that the City had accepted the easement is contrary to its

own decision to dismiss the City from the case as a party without any interest in the property at issue.

Nor is there cogent, clear, and convincing evidence of implied acceptance by the City or the public generally. Use by the general public is not sufficient to prove acceptance of a dedication if a landowner's intent to make a dedication is not first established. This is because the public "cannot accept that which is not offered in the first instance." *Cohn v. Town of Randall*, 633 N.W.2d 674, 677 (Wis. Ct. App. 2001); *see* McQuillin, *Municipal Corporations* § 33.57 ("[A]n offer to dedicate may be impliedly accepted by a user of the property by the public for the dedicated purpose for a considerable length of time. This is true even though the property has not been worked by the public authorities *provided the circumstances are otherwise consistent with an intention to dedicate.*" (emphasis added) (footnotes omitted)). Since the Chartiers have not established McNaughton's intent to publicly dedicate the easement, they have also failed to establish public acceptance of the dedication.

IV.

"On further review, we have the discretion to review any issue raised on appeal." *State v. Crawford*, 972 N.W.2d 189, 203 (Iowa 2022) (quoting *State v. Vandermark*, 965 N.W.2d 888, 891 (Iowa 2021)). We exercise that discretion to review only the district court's ruling on the issue of public dedication. The court of appeals decision is final as to all other issues. On our de novo review, we conclude the district court erred in finding that "McNaughton has dedicated the concrete portion of the easement to the City of Lawton and the City of Lawton

has accepted the same area as a public street." The district court further erred in holding that "McNaughton's rights to the 13-foot by 80-foot easement area covered by the concrete street are terminated and extinguished."

We remand this matter to the district court for further proceedings consistent with this opinion and the decision of the court of appeals.

**DECISION OF COURT OF APPEALS AFFIRMED; DISTRICT COURT JUDGMENT REVERSED AND CASE REMANDED.**

Appel, Waterman, Mansfield, and Oxley, JJ., join this opinion. McDermott, J., files a dissenting opinion, in which Christensen, C.J., joins.

**McDERMOTT, Justice (dissenting).**

The creation of an easement for the public's use of land—a "dedication"—happens one of two ways: *express* dedication, which is evidenced through words, or *implied* dedication, which is evidenced through actions. The majority focuses on Willard McNaughton's private easement agreement and his oral refusals for an express dedication to the City of Lawton (City) and, in so doing, holds that there has been no dedication. But the majority's holding requires one to overlook two decades' worth of *actions* by both McNaughton and the public that evidence the creation of an easement for the public's use of the paved portion of the street along the edge of the property. Over that time, McNaughton permitted all members of the public unfettered access to the public street that the City paved on his land with his knowledge and consent.

So strong was McNaughton's own belief in the public's right to traverse the paved part of the street on his land that he himself thought the police could ticket him if he blocked traffic on it. That belief is consistent, of course, with having granted the public an easement. Most folks, I'd have to assume, would understand that they have an absolute right to block off a strip on their own land if indeed they believed that the public had no legal right to drive on it. The district court judge who presided at trial bought little of McNaughton's pitch that he hadn't dedicated an easement for the street, so much so that the court not only found public dedication of an easement but that McNaughton should pay the opposing party's legal fees from the litigation.

It's hard to see what remains of the doctrine of implied dedication—a doctrine appearing in cases throughout our state's history—if the facts of this case fail to establish an easement for the public's use of this (I'll repeat) *paved public street*. I must respectfully dissent, and would hold that McNaughton's unambiguous actions established an implied dedication of an easement for the public to travel the paved street on his property.

I.

I won't restate the facts of the case, but some key points are worth revisiting as we consider the legal framework. In November 1998, three months after McNaughton bought his property bordering Highway 20 on the south edge of Lawton, the Chartiers bought the neighboring property to the east to build an assisted living facility. Jeanine and Stanley Chartier were prohibited from installing a driveway that connected directly from their assisted living facility straight north to Highway 20. So to get access to the highway, the Chartiers needed approval for a "special access connection." McNaughton and the Chartiers signed, and the Iowa Department of Transportation approved, an "Application for Establishment of a Special Access Connection" that granted the right to connect the new road to Highway 20.

On the heels of the Chartiers' purchase of the land, they entered into a written easement agreement with McNaughton that would cover part of the north–south access from Highway 20. That access would then bend into an east-west street running to the assisted living facility farther east. The City named the new street "East Char-Mac Drive" (a name combination, one might

presume, based on "Chartier" and "McNaughton"). But McNaughton never publicly recorded this easement agreement.

In 2000, the City paved the street running from Highway 20 to the assisted living facility. Minutes of city council meetings and a public notice for the City's proposal to install the street described the project as a "public improvement." The City accepted a bid from a contractor to complete the project for $52,000 with the contract listing the "City of Lawton" as the "Owner." The City's attorney sent McNaughton a letter to confirm that the paved portion of the access located on McNaughton's property would be maintained by the City in accordance with the maintenance of all other city streets. The City paid for the project using public funds without separate financial contribution from McNaughton or the Chartiers.

The City designated the Chartiers' property, but not McNaughton's, as part of an "Urban Renewal District" and "Tax Increment Taxing District." The City thus created what is commonly referred to as a tax-increment financing (TIF) program to help recoup the expense of the project. The resolution creating the TIF program stated: "No land will be acquired by the City and included within the 'CHAR-MAC Addition Urban Renewal Plan' area."

The public has had free and open access to the road since its construction in 2000. Jeanine Chartier testified that the street was always intended to be a public street. McNaughton acknowledged that there is no reasonable alternative to access the assisted living facility without crossing over his land. Traffic on the street since the sale hasn't materially changed from before the sale. McNaughton

has never limited or otherwise interfered with the public's use of the street since the sale. McNaughton testified to his belief that if he blocked any portion of the access road, law enforcement would ticket him for interfering with traffic. McNaughton never, for twenty years, did anything to suggest anyone's use of the street was prohibited or that the public had any restriction in using of the street. He never, for instance, posted any sign that the street (or the part of the street on his property) was a "private drive," a "private road," or for "residents and guests only."

## II.

As mentioned, dedication of land for public use "may be express or implied." Restatement (Third) of Property: Servitudes § 2.2, at 62 (Am. L. Inst. 2000) [hereinafter Restatement]. Intent to dedicate can be inferred from the owner's acquiescence to the public's use over an extended period of time. *State v. K.C., St. J. & C.B.R. Co.*, 45 Iowa 139, 143 (1876). "[T]he duration and type of public use can raise both the presumption of the owner's intent or offer to dedicate land to public use, as well as constitute acceptance by the public." 11A Eugene McQuillin, *The Law of Municipal Corporations* § 33:4, at 513 (3d rev. ed. 2018).

An implied intent to dedicate "need not have actually existed in the mind of the land owner." *Id.* § 33:37, at 646–47. Acceptance of the property by the public may be shown by a formal act of a governmental body, by the public's use of the land, or by a government's maintenance or control of the land. Restatement § 2.18, cmt. *e*, at 319.

In *Henry Walker Park Ass'n v. Mathews*, we found a public dedication of a street and a parking lot that bordered a park and cemetery in a lawsuit brought by a landowner's family. 91 N.W.2d 703, 709–10 (Iowa 1958). The cemetery was accessible only from a main gate at the front of the parking lot. *Id.* at 709. Hitching posts for horses had been installed for visitors to the cemetery and the park during the horse and buggy days, and visitors later parked cars there. *Id.* The deceased owner and his successors (the defendants—the original owner's daughter, her husband, and their son) had lived nearby and had not complained about or sought to limit the public's use of the parking lot for many years. *Id.* at 710. The family also never paid taxes on the lot. *Id.* We found that the owner's and his successors' actions implied an intent to dedicate the land and further found public acceptance of that implied public dedication. *Id.* at 711–12.

The majority finds no implied easement may be found based on his unrecorded easement agreement with the Chartiers. That agreement stated that the easement he was providing "was for the exclusive use and benefit of Chartier, and the residents, guests and other invitees of the assisted living facility located on Chartier's property," and was "not to be construed as an easement for the use and benefit of the general public." The majority's focus on the easement agreement with the Chartiers certainly would undercut any claim *by the Chartiers* to rights beyond those in the easement agreement. But the Chartiers do not ask us to declare some further right to McNaughton's land belonging to *them*. The Chartiers instead ask us to declare that the entire street, including the paved portion on McNaughton's land, has been dedicated *to the public*.

Simply because McNaughton granted a private easement to the Chartiers doesn't preclude a finding that he dedicated the same land for the public's use. In *Herrick v. Gregory*, the South Dakota Supreme Court found public dedication of a roadway where a private license had, as in this case, already been expressly granted on the same parcel of land. 190 N.W. 881, 882 (S.D. 1922). The owner of a lot granted a license to the owners of the neighboring lot, allowing the neighbors to come on their property to access the neighbors' driveways. *Id.* The license stated that the area (an alley) was to be "kept open as a private highway." *Id.* The grantor of the license (and the next owner of the lot following its sale) allowed the public free use of the alley for many years. *Id.* The court found that the owners of the lot had not only permitted the neighbors a private license to the alley, but also had "clearly indicated an intention to dedicate a right of way across the rear end of this lot to the public." *Id.* The court noted that "while [the license] purported to grant only a private and personal right to the grantee, he kept the way open to the public, and it was used by all who had occasion to use it, without hindrance or restriction by him." *Id.* The court found acceptance of the implied dedication by "long-continued use of such right of way by the public." *Id.*

McNaughton concedes that he didn't publicly file the easement agreement in 1999; it remained unrecorded until 2018. Neither the City nor the public at large were on notice of the private easement. No evidence shows that the public knew that McNaughton intended a purely private easement. To the contrary, the evidence establishes that McNaughton made no effort to restrict the general

public's use of the part of the street on his land. He placed neither signs on poles nor markings on pavement indicating any restriction. He concedes that members of the public would reasonably believe that the street is a public street. Indeed, he believes that law enforcement would cite him if he even attempted to restrict access to the road, thus acknowledging a reasonable understanding by the City of a duty to protect the public's right to use and access the street.

The majority points to McNaughton's testimony claiming that the City asked him to dedicate the easement on "at least three" occasions and that he refused each time. According to McNaughton, the first request came before the City paved the street in 2000 and the second perhaps a year later in a discussion with the City's mayor at the time, Jeff Nitzschke. Nitzschke testified at trial, but no one asked him about any such discussion with McNaughton. Nitzschke contradicted McNaughton's testimony by testifying that he believes the entire street is a public street. McNaughton didn't offer any evidence about the City's third request.

Minutes from the city council meeting before the City paved the street include a resolution for the "1999 Char-Mac Addition Street Improvement Project." The resolution states that the project "is in the public interest" and sets a "public hearing" for review and comment on the project's plans, specifications, contract, and estimated cost. The resolution also instructs the city clerk to publish a "notice of public hearing and a notice to bidders" concerning the project and includes other details relevant to the public bidding process. McNaughton testified that he saw some of these minutes at the time. The City council's

meeting minutes plainly run counter to the notion that the City understood this street paving project was for private use and not public dedication. McNaughton's testimony that he expressly refused requests from the City to dedicate an easement for a public street thus conflicts with plenty of other evidence.

And other contemporaneous public records advance this point further. The City engaged an engineering firm to prepare the plans and specifications for the project at public expense. After concluding its public bidding process, the City entered into a contract with a construction company to complete the work. The contract for the project lists the "Owner" as "City of Lawton." The City paid for the project using public funds without financial contribution from McNaughton or the Chartiers. In preparing the land for paving, the City removed four big trees on McNaughton's property. The City's documents describe the project as a "public improvement."

What's more, written communications that the City had directly with McNaughton contradict McNaughton's claim. As the paving project neared completion, in a letter dated February 2000, the city attorney informed McNaughton that the City would maintain the paved portion of the street on McNaughton's property just as it maintains all other city streets.

The City was making a significant investment—planning, engineering, contracting, constructing, and financing—in this project. McNaughton knew about the City's sizeable construction project that included part of his property, and he further knew that the City had created a special TIF program associated

with it. The City's actions—and McNaughton's knowledge of and response to them—support the conclusion that the public's right to use the street over McNaughton's land wasn't contingent on the Chartiers' ownership of the facility.

And these points aside, McNaughton's focus on his communications with the City about refusing a formal dedication to the City overlooks the potential distinction between an express dedication to a *governmental body* and an implied dedication to *the public*. "The acceptance of a dedication need not be by the municipality, but may be by the general public." *Wolfe v. Kemler*, 293 N.W. 322, 324 (Iowa 1940). Where there is no formal acceptance of a street by a governmental body, the "public use" of the street necessary to show acceptance of a dedication "need be only such as the public wants and necessities demand." *Kelroy v. City of Clear Lake*, 5 N.W.2d 12, 20 (Iowa 1942); *see also* Restatement § 2.18(1) cmt. *a*, at 317 (describing "the methods by which governmental bodies *and the public* may acquire servitudes" (emphasis added)). Again, acceptance of the property by the public may be shown in one of several ways: (1) by a formal act of a governmental body, (2) by the public's use of the land, or (3) by a government's maintenance or control of the land. Restatement § 2.18 cmt. *e*, at 319. Unlike other types of property conveyances, "a dedication does not require a definite grantee, and is normally made to the public generally." *Id.*

The district court, in my view, correctly found both public dedication of an easement by McNaughton and acceptance by the public. As to the first inquiry, McNaughton consented to the City's improvement project to pave a street on land he owned; the City expended considerable public funds in constructing the

street; the City agreed to maintain the street consistent with the City's maintenance of all other public streets; McNaughton does not now, and has never, objected to the public's use of the paved strip on his property; and McNaughton does not now, and has never, restricted the public's use of the paved strip on his property. *See Henry Walker Park Ass'n,* 91 N.W.2d at 710 (finding public dedication of a street and park based on the public's long-continued use of the land with the knowledge and consent of the owner); *Sioux City v. Tott,* 60 N.W.2d 510, 516 (Iowa 1953) (finding public dedication based on "acts of the owner indicating an intention to dedicate," including that a strip of road smoothed by the city had been "long used by the general public as a road"); *Kinsinger v. Hunter,* 192 N.W. 264, 264–65 (Iowa 1923) (finding public dedication of a road where the owner knew of and consented to the public's continuous use despite there being no public record of the road's establishment); *State v. Birmingham,* 38 N.W. 121, 122 (Iowa 1888) (finding public dedication of a road based on the owner's knowledge of the public's use and government improvements of the road over time); *see also* McQuillin, *Municipal Corporations* § 33:35, at 618 ("[I]f the owner of land either intentionally or otherwise induces the public to believe that the property has been dedicated, the owner is estopped to contradict the dedication to the prejudice of those misled by his or her action.").

Within these same facts, the public's acceptance of the easement is similarly established. *See Marksbury v. State,* 322 N.W.2d 281, 285–86 (Iowa 1982) (finding public acceptance by the public's continuous use of a beach

without objection of the owners and the state's maintenance of secondary roads within the beach which were presumably for the public); *Henry Walker Park Ass'n*, 91 N.W.2d at 710 (finding the public's actual use of a street and park constituted acceptance); *Kinsinger*, 192 N.W. at 264–65 (finding public acceptance when the highway in question was "graded and improved" by highway officers with "a pipe or culvert provided . . . at public expense," the road had been repaired over time, and telephone lines were strung on poles set in the road).

The majority argues that the unrecorded easement agreement shows that McNaughton didn't intend to dedicate an easement to anyone other than the Chartiers. Although the easement agreement uses the word "private," the language of the agreement permits use of the road by the facility's "residents, guests, and other invitees"—in other words, any member of the public. McNaughton also testified that he agreed at the outset of the easement to let the public use the road:

> Q: So as far as traffic coming in from Highway 20 and turning to the east to go to the facility, do you have any objection to that continuing?
>
> A: No, *that's what I originally agreed to*, I thought.

(Emphasis added.) McNaughton testified that he neither objected to nor restricted anyone's use of the road—and indeed, that this openness to the public's use was as he "originally agreed."

The majority's reliance on the easement agreement as more or less determinative of the case blurs the distinct doctrines of *express* dedication and

*implied* dedication. "A dedication is express when the intent is manifested by oral or written words, and is implied when the intent must be gathered from the acts of the dedicator." McQuillin, *Municipal Corporations* § 33:3, at 501–02. The majority cites to a treatise that says dedication must be clear from the "writings" purporting to dedicate the property. *See id.* § 33:42, at 660. But this argument only toasts one slice of the public dedication loaf. This is a case of *implied* dedication, for which we look to McNaughton's *actions.* "The old saw 'actions speak louder than words' has more than a grain of truth to it, and we adhere to it where, as here, a party's words are contradicted by his actions." *Johnson v. Associated Milk Producers, Inc.*, 886 N.W.2d 384, 394 (Iowa 2016) (quoting *Schoppert v. CCTC Int'l, Inc.*, 972 F. Supp. 444, 447 (N.D. Ill. 1997)). The majority omits a relevant portion in the very treatise upon which it relies, which makes clear that an owner's intent may be inferred not only from some unequivocal act but an "unequivocal assent to the use by the public." *McQuillin*, Municipal Corporations § 33:42, at 663–64. McNaughton's actions demonstrate his unequivocal assent to the public's use of the street on his property, establishing an implied dedication.

The majority cites several cases intended to support a finding that no implied dedication occurred here, but none buttresses its position for a simple reason: in each, the property owner (unlike McNaughton) took action to *restrict* public access to the road. *See State v. Hutchison*, 721 N.W.2d 776, 782 (Iowa 2006) (finding no dedication where the landowner "at all times retained control of the roadway, negating any intent to abandon the road to the public"); *Tott*, 60

N.W.2d at 516 (finding no dedication when the defendant "posted the road as private and later blocked it so no member of the public could use it" and the owner never "asked the city to drag, blade, or grade this strip" of the road); *Culver v. Converse*, 224 N.W. 834, 837 (Iowa 1929) (finding no dedication because the owner restricted access to a roadway by placing gates across it)[2]; *Bradford v. Fultz*, 149 N.W. 925, 927–28 (Iowa 1914) (finding no dedication where the owner restricted public access to road to his business by seasonally closing gates across it). These cases find no analog in this case, in which McNaughton never took any action to restrict public access to the street.

The majority claims that finding public dedication "would have significant implications for a wide array of property rights," including "the public's use of driveways and parking lots on commercial properties." But the property at issue in this case is *not* a private driveway nor a parking lot. It's a street constructed, financed, named, and to be maintained by the City of Lawton. McNaughton could have taken any number of simple actions to indicate that he wasn't granting an easement to the public—as private property owners commonly do—by, for instance, posting a "private road" or "residents and guests only" sign along his property. He of course never did.

Finally, the majority claims that finding an implied dedication in this case would amount to "a de facto taking" of private land without just compensation. But as one can deduce from scanning the dates on the cited cases, Iowa has

---

[2]The *Culver* court also found persuasive that no government entity applied public funds to improve the road—another departure from this case. *Culver*, 224 N.W.2d at 837 ("It is not shown that [the road improvement] was done at public expense.").

throughout its history accepted and employed the public dedication doctrine for transfers of private property—particularly streets and roads—to public use:

> A common law dedication of land for a public purpose is well recognized in law. It is in no sense a *taking* of land for public purpose, for the public, as represented by the municipality, cannot *take* private property for a public purpose without paying for it. Dedication is just what the term signifies. It is the owner's *giving* the right or easement for public use—the devotion to public use by the owner.

*Tott*, 60 N.W.2d at 515. While parties (and judges) might disagree about its proper application based on the facts of particular cases, the doctrine itself suffers no constitutional infirmity and has deep historical roots.

I thus would affirm the district court's holding that McNaughton had publicly dedicated an easement for the public on the paved portion of the street on his land.

Christensen, C.J., joins this opinion.